NOVEMBER TERM, 1873.

KING, appellant, and RUCKMAN, respondent.

RUCKMAN, appellant, and KING, respondent.

1. When a vendor refuses to convey real estate according to his agreement, and keeps the vendee out of possession, and the rents and profits are less than the interest on the purchase money, the vendor will not be allowed such interest.

King *v.* Ruckman.

2. Under such circumstances, the vendor will take the interim rents and profits, and the vendee will not be required to pay interest on the purchase money.

3. Where it is a part of the contract of sale that the purchaser shall have a certain time for the payment of the purchase money, he will be entitled to the same credit on the subsequent execution of the contract by the court; the postponement of such execution having been occasioned by the misconduct of the vendor.

4. A minute defect in a decree will not be regarded on appeal, unless it appears that the attention of the Chancellor was called to such subject matter.

Cross-appeals were taken from the final decree in the Court of Chancery, made in accordance with the opinion of the Vice-Chancellor upon exceptions to the master's report, and upon certain questions adjusted by said decree, agreeably to his recommendation. The opinion is reported *ante, p.* 298.

*Mr. W. L. Dayton* and *Mr. C. Parker*, for King.

*Mr. Vanatta* and *Mr. Browning,* for Ruckman.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This is not the first occasion that this controversy has called for the attention of this court.

The bill was filed for the specific performance of a written contract, whereby Elisha Ruckman agreed to sell and convey certain lands to Benjamin W. King, the complainant. The vendor refusing to make the stipulated conveyance, the suit in chancery was begun. The judgment in the first instance was unfavorable to the complainant, but that result being disapproved of was reversed in this court, and the defendant was, accordingly, directed, among other things, to make a conveyance in conformity to his contract. The proceedings having been remitted to the Court of Chancery, a reference was made to a master, to ascertain certain particulars. On the coming in of the report of this master, his

finding was excepted to by both parties, and it is from the
final decree of the Vice-Chancellor, following on this report
and the exceptions to it, that the present appeals have been
taken.    This decision stands now before this court subject to
exceptions as well on the part of the complainants as on the
side of the defendants.

Of the questions thus arising, by far the most important
one, considered with respect to these litigants, is that relating
to the claim made by Mr. Ruckman, the defendant, to an
allowance of interest on the purchase money.    The articles of
agreement bear date the 12th day of May, 1868, and stipulate
for the following payments, viz. : $100 on the execution of
the contract; $19,900 in cash on the first day of June
then next; $80,000 in cash on the first day of July
then next, on the delivery of the deed, and the residue
to be secured by a bond and mortgage, payable in five equal
annual payments, from the date of said agreement, with
interest at six per cent. per annum, payable semi-annually.
The agreement on the part of the vendor was, that on
receiving such payment and such securities, he would execute
and deliver to the vendee a deed of general warranty, convey-
ing the premises in fee, free from encumbrances.

The number of acres of land which, by the decree of this
court, the defendant was directed to convey, has been ascer-
tained to amount to one thousand three hundred and fifty-
three acres and seventy-seven hundredths, so that the total
contract price is $372,286.75.    The contention of the defend-
ant is, that interest on this sum should be awarded to him in
the same manner as though he had complied with his con-
tract, and had executed a deed and put the complainant in
possession of the property, as he agreed, on the 1st day of
July, 1868.    The lands during this interim have been, com-
paratively, unproductive, the master reporting that the rents
and profits have been equalled by the taxes.

The Vice-Chancellor rejected this claim of the defendant,
and I think such rejection is clearly justifiable, on grounds
both of natural and legal equity.    The proposition that when

King *v.* Ruckman.

unproductive lands are agreed to be sold, the vendor, breaking his contract, can refuse to convey, and thus keep the vendee from the use or improvement of the property, and when at last compelled to perform his agreement by the decree of a court, may throw the loss, in the form of accumulated interest, on the innocent vendee, appears to me to be devoid of even a color of justice. Such a principle would cast the burthen on the innocent instead of on the faulty party. Even when the intention of the vendor has been blameless, and when he has refused to comply with his engagement from an honest belief of his right so to do, if a loss ensues in consequence of such refusal, such loss should be borne by him. The common rule of the law is, that where one of two innocent parties is to bear a loss, he must bear it through whose act such loss has occurred. That a vendee, kept out of the possession of unproductive lands, must always be placed at great disadvantage, is undeniable. And yet much of the argument in the present case proceeded on the idea, that because these premises have, since the sale, advanced in value, the complainant has suffered no injury by being kept out of possession. But this is altogether false reasoning. The change in value has nothing to do with the point. If the vendee had been put in possession the same change would have occurred. The injury to him is, that he has, by an illegal act, been deprived of the enjoyment of the property for over five years, and if he should pay the interest claimed, he will pay precisely the same that he would have paid if he had been in possession during this long period. I do not see how any one can deny that this deprivation of enjoyment and of title is a matter of concern to a vendee. Who can say that in the present case the interest of this vendee would not have been greatly promoted by having had the opportunity to sell or improve these lands? But it seems futile to spend time in any argument to show that a present title and a present possession of real property, in contrast to a precarious expectation of a future title and possession, are valuable interests, the withholding of which is necessarily attended with great risk of disaster and detriment.

The complainant, by the misconduct of the defendant, has suffered this wrong for over five years, and it is now insisted that the loss resulting must be borne, exclusively, by the complainant, and that the defendant should be placed, by a court of equity, in the precise situation that he would have been in if he had performed his contract to the letter.   As I have said, I see no justice in such a demand, and if the question was now to be settled on principles of common sense and right, I should, on that ground, be prepared to reject it. But such is not the case, for, in my estimation, the rule applicable to the case is not, and never has been, in any doubt whatever.   The equity of the situation has been so clear that the course of practice seems to have assumed from the first a settled form, and it has been continued to the present day, without, so far as I have learned, any voice of dissent or even of criticism being heard.

This general theme, as to when a vendee will be required to pay interest on the purchase money, is discussed at large in the text books, and the rules which are applicable in general or in particular conjunctures, are there defined and elucidated.   Among the principles there stated will be found the one at present applicable, and with which alone I shall attempt to deal.

The rule which I deem apt in this instance is thus expressed by Lord St. Leonards, viz. :  " Where interest is more in amount than rents and profits, and it is clearly made out that the delay was occasioned by the vendor, to give effect to the general rule would be to enable the vendor to profit by his own wrong ; and the court, therefore, gives the vendor no interest, but leaves him in the possession of the interim rents and profits."   2 *Sug. V. & P.*, (*8th Amer. ed.*) *p.* 322, § 24.

The Vice-Chancellor has applied this rule to the present case, and the questions are, as to the existence of the rule, and the propriety of its application.

As to the first question, with regard to the existence of the rule, as I have already said, I do not know that its prevalence, whenever applicable, has, on any occasion, either in a

King v. Ruckman.

dictum or judgment, been challenged or gainsayed. That the vendee, if kept out of possession by the vendor, would not be charged with interest, was referred to, as a settled rule, by Lord Hardwicke, in the case of *Blount* v. *Blount*, 3 *Atk.* 636, and from that time to the present, this rule can be traced in constant use through a long line of decisions. The briefs of counsel in the present case point to many of these adjudications, which are so clearly to the purpose, that I think it is necessary for me only to make this general reference to them.

I consider, then, the rule to be indisputable; why, then, is it not applicable to this case?

This rule, as I conceive this subject, is put in force in every case in which these three qualities enter; first, the rents and profits must fall below the interest; second, the delay must be the fault of the vendor; and, third, the vendee must be out of possession. I do not find, that in any case in which these three elements exist, interest has been exacted. That these elements are present in the case now before us is, of course, beyond denial.

But in case of the pressure of this settled practice, it has been intimated, in the course of the present discussion, that in order to put the rule in force, it was necessary that the vendor should not only be in fault, but that such fault should be willful. I think there is not the least foundation for such a contention. Indeed, the rule has been, almost universally, applied in those instances when there was no sugggestion of anything intentionally wrong in the conduct of the seller of the property. It has received its most frequent exemplifications in cases in which the delay in completing the contract has arisen from the discovery of latent defects in the title. On such occasions, the vendor was no further in fault than every one is in fault who undertakes to do what he afterwards discovers he is not prepared to do. In such cases, a vendor is blamable simply for having perhaps omitted to have his title looked into with sufficient care. These illustrations make it demonstrably

clear, that the point as to the degree of the culpability of the vendor has not, in the least, affected the course of equity in the particular in question. The only inquiry has been, whether the vendor has failed to fulfill his contract. Whether such nonfeasance was the result of an act of volition, or of his inability, has not been deemed of any consequence. In the case of *Jones* v. *Mudd*, 4 *Russ.* 118, which is one of the examples of the rule referred to by Mr. Sugden, there was an entire absence of any willful refusal, on the part of the vendor, to carry his agreement into effect, and yet interest was denied to him during the time that he had been unable to perfect his title. I regard that case as not distinguishable from the present one. The agreement was, that Jones would deliver a satisfactory abstract of title, and that he should afterwards, at a fixed time, upon receiving part of the purchase money and security for the residue, convey the property, the vendee agreeing to pay, upon receiving such conveyance, such part of the price, and to secure the residue by a mortgage drawing interest at a certain rate. The abstract of the title proved unsatisfactory, and it took a considerable time to have it perfected. Here there was a case of fault in the vendor, but a fault of the slightest kind, and it was not even hinted that the delay was willful on his part. The vendor claimed interest on the purchase money, and it was denied to him. If, in the present instance, the defendant, instead of being in willful default, had been willing to perform his contract, but had been unable to do so on account of the state of his title, this case and the reported case would have been parallel. As long as the case of Jones *v.* Mudd shall be suffered to stand as a legal precedent, I cannot think that it can rationally be denied, that when the default is on the side of the vendor, no matter how involuntary such default may be, he can have no just claim to an allowance of interest.

And indeed, so completely was it the established course to refuse interest to a vendor who failed to convey, from whatever cause, that when the parties desired a different result it

was found to be necessary to introduce in their articles of sale a special agreement with that aspect. These clauses are of frequent occurrence in the reports, and have been construed in several of the decisions, and were to the effect that interest should be paid from a fixed time, whether or not the title was delayed from being passed on any ground whatever. This is a prominent feature in the cases of *Esdaile* v. *Stephenson,* 1 *Sim. & Stu.* 123; *De Visme* v. *De Visme,* 1 *Macn. & G.* 336; *Sherwin* v. *Shakspeare,* 17 *Beav.* 267. Now the purpose of these stipulations is obvious: it was to make the vendee pay interest for which he would not have been liable, that is in case of an involuntary delay of the vendor in making title. And this has been the adjudged construction of them. For example, where the term of the contract was " that if from any cause whatever the completion is delayed, the purchaser must pay interest," it was held that if the delay arose from the voluntary act of the vendor, the obligation to pay interest did not attach. It was considered that the clause applied only when the delay proceeded from a circumstance outside of the volition of the seller. Such was the view taken in *Williams* v. *Glenton,* 34 *Beav.* 531, the master of the rolls saying, in connection with one of these special clauses, " the exception is this, that when the delay is occasioned by the misconduct of the vendor it is inequitable that he should profit by his own wrong, and consequently, in such cases, the terms of the contract must be varied, or if not varied, it must be understood to imply that the words used include every case except the misconduct of the vendor." To the same effect are the other cases already cited. And the introduction into contracts of sale of these special clauses afford a striking proof of how entirely the general rule of equity was established; it required a particular agreement to entitle the vendor to interest when involuntarily in default. And it was exclusively in connection with these special stipulations for interest, that the question whether the default of the vendor was willful or was involuntary, arose and was discussed. Under contracts providing for the payments of interest whether or not, from any

cause whatever, a delay occurred in passing the title, it manifestly was a point for consideration, whether such provision was intended to apply to delays willfully or fraudulently occasioned by the vendor. As we have seen, the judicial result was that even these special agreements, notwithstanding their broad language, did not extend to a result brought about by a willful breach of contract on the part of the vendor. It therefore follows that if we were to import into the present case a precise stipulation on the part of the complainant to pay interest on the purchase money notwithstanding any delay in making the title, still, by force of the limitation put upon such an agreement, by the adjudged cases, the claim which the defendant, on this point, makes, would have to be disallowed. But there is no such special contract in the case, and the result is that if the non-performance of this contract had been involuntary on the side of the defendant, but had come about from some unforeseen circumstance, no claim of interest could have been listened to. This is the settled rule as I read the authorities. But this court has already adjudged that this defendant willfully refused to carry out his contract. How is it possible then to contend that the loss coming from that misconduct is to be borne by the complainant, who in this matter has done no wrong? It is scarcely necessary to say that the circumstance that the purchase of the land has proved a fortunate enterprise or the reverse, has never, in the decision of these questions, entered into the judicial consideration.

Being satisfied that the rule in question is entirely established as a part of our system of laws, and that it is applicable in this present instance, my conclusion is that the result reached on this head in the Court of Chancery is correct.

The next exception made by the defendant to the decree appealed from, relates to its provision directing a portion of the price to be secured by a mortgage. By the terms of the article of agreement, the residue of the purchase money, after the payment of the first three installments, was to be secured

by a mortgage on the premises, payable, with interest, in five equal annual sums, from the date of the agreement, which date was the 12th of May, 1868. The Vice-Chancellor has directed that on the execution of the conveyance for these lands, a mortgage should be executed which will give to the purchaser the same time and modes of payment, after he acquires title, which he would have had after such event, if the transaction had been closed in accordance with the compact between these parties. This part of the order is put in dispute by the defendant, on the ground that this works an alteration of the contract, and that all that the court can rightfully do, on a bill of this character, is to order the agreement such as it was to be specifically performed. But this objection, certainly, is not tenable. The contract, on this point, cannot now be carried into effect. The stipulated time for the giving of the title on the one side, and the mortgage on the other, has gone by, and is irretrievable. From the necessity of the case, there must be something substituted in this respect, for what the parties agreed. It is impracticable to execute the contract in this particular, except upon the doctrine of *cy pres*. The decree, in this feature of it, goes upon the theory that the stipulation for time for the payment of the residuum of the price, after the acquisition of the title by the purchaser, was a substantial part of the agreement, and it seems to me that this is well founded in the merits of the case. After a vendee gets title and the possession, he is then in a position to turn the land to account in the way of raising money. He can, either in whole or in part, sell or mortgage it. The complainant in this case was, by force of his agreement, entitled to this advantage, and I therefore entirely assent to the view of the Vice-Chancellor, that he ought not to be deprived of it by the misconduct of the other party.

This disposes of the grounds of appeal which were urged in behalf of the defendant.

With respect to the exceptions taken to the decree on the other side, I do not think any one of them is well taken. I shall dispose of them in a few words.

The complainant has been directed to allow the expenses of making the roads and fences. These improvements of the property cannot be looked upon as voluntary; the roads were made by the public authority, and the fences are incidents of them. They enter into the value of the corpus of property which will go to the complainant, and under the circumstances it is just that he should pay for them.

With respect to the lands not conveyed. I think these lands are embraced in the contract. Parol contracts are not void, they are merely, by force of the statute of frauds, unenforceable by suit; but they can exist, and it is admitted both in the bill and in the answer, that they are embraced in this agreement. But it seems to me, that an equitable compensation has been made to the complainant for these lands. He has been exempted from the payment of $275 per acre for them, which was more than their average value when they should have been conveyed to him. Without attempting to lay down any general rule upon the subject, I will say, that I am not satisfied that this does not fully satisfy the equities of this case. The last objection related to charging the annual taxes for the land against the complainant. These taxes are so large that they absorb the whole of the annual profits of the property, so that it seems to me that they ought not, as between these parties, to be regarded as a render paid to the public for the mere enjoyment of the possession. They have been obviously imposed in view of the value of the fee in the land, rather than with any reference to the mere usufruct. They have, therefore, been properly charged to the complainant. If the sum estimated on this score comprises, in part, taxes for lands not embraced in this controversy, that matter, it seems to me, should be corrected on an application to the court below. From the case as it is now developed before this court, it would seem that this point has been started, in a specific form, for the first time, on this appeal. The petition of appeal objects to the entire allowance for taxes rather than to any particular part of it. A matter which is thus wrapped up in the proceed-

ings, and which has not received a distinct adjudication, should not be made a subject of appeal. If a small error creeps into a master's report, and such error is not pointed out to the Chancellor, and a general decree is made, it does not seem to me that such decree can be attacked in this court by reason of such minute defect.

In my opinion, the decree in this case should be affirmed, each party paying his own costs in this court.

The whole court concurred.