SMITH, FRANK A., Associate Judge.
This was a suit for specific performance of a contract for sale of land, brought against the sellers. The appeal is by the defendants from an order granting specific performance.
Appellant contracted to sell certain lots, nineteen in number, to Lynn C. Brooks. The contract provided for a purchase money mortgage or alternatively for the seller at his option to place executed deeds in escrow and that each note could then be released on payment of $1,200 per lot. The contract provided interest and an expiration date as follows: “Total amount due on or before 18 months at 6% interest per annum payable annually”. The contract date was February 17, 19SS, so the expiration date contemplated was August 17, 1956. The contract further contained the following provisions:
“That in case of failure of the purchaser to make either of the payments, or any part thereof, or to perform any of the covenants on his part made or entered into, this contract shall, at the option of the Seller, be terminated and the purchaser shall forfeit said earnest money or deposit; and the same shall be retained by the Seller as liquidated damages, and the escrow agent is hereby authorized by the purchaser to pay over to the Seller the earnest money or deposit.”
Appellant chose to utilize the alternative method and deposited the deeds in escrow with a title company, which handled the closings.
Brooks made a partial assignment of the contract to appellee. This assignment designated 14 of the lots which appellee could purchase. Brooks had already purchased two of the lots, so three lots were still left for him to purchase.
*396 Appellant and appellee entered into an agreement whereby appellant was released from a promise to pave a certain street. Consideration for the release was $1,000 to be credited at the rate of $200 each on the next five lots, or on the last five in event all the lots were purchased.
Appellee paid for five of the lots before the August 17, 19S6, expiration date, and obtained two more lots after that on September 18, 1956, and September 20, 1956. These transactions were with the escrow agent. On October 8, 1956, appellant notified appellee that he considered the contract terminated and void as to the remaining (seven) lots. Subsequent to this, however, Brooks, through the escrow agent, completed the purchase of the three lots remaining to him under the contract.
About September 26th, after being informed by the escrow agent that it could not obtain another deed under the contract because of such instructions given it by appellant, defendant through its President contacted appellant over the phone and expressed his desire to pay the remaining balance on the contract and sought to see him to make a tender of the balance, but appellant could not then see him and said that they would later get together “on the thing”. Failing in his effort to get with appellant, defendant went to the escrow agent and offered to pay the balance due on contract, exhibiting its check for same, but under its instructions from appellant the offer was refused.
Although the agreement provided for delivery of possession with delivery of deed, defendant without knowledge to appellant began construction of a dwelling upon one of the lots involved herein which at the time of the letter of October 8th was only partly completed and which appellant deemed it necessary to complete in order to protect same from the elements. He proceeded with the completion to such stage as to render it habitable although not completely finished and the next February moved into it and has occupied same up to the time of trial. The parties have agreed that appellant’s expense in completing the dwelling amounted to $1,810.56.
The Chancellor found and decreed that appellee was entitled to specific performance of the contract for the seven remaining lots. In his findings he recited that apparently neither party knew that the contract provided for expiration by its own terms on August 17, 1956, so that two of the sales were closed on September 18th and 20th respectively, one lot on each date, checks for the proceeds, which were mailed by the escrow agent to appellant and which he cashed and used. Next mention is made of the consummation of the sale of three lots to Brooks (deed to Brooks Construction Company) on November 2nd, which was after the institution of this suit and was brought in by amendment. He then discussed the sending of the October 8th letter by appellant to appellee, 16 to 18 days after receiving checks for the two lots closed after the expiration date, and which letter stated he considered the transaction terminated ; that three days later the suit was promptly filed. Next the findings deal with the recognition of the contract by appellant with reference to Brooks and appellant’s conveyance of the three lots pursuant to the contract, .-/ter making the foregoing findings, the Chancellor then says “Therefore, a decree of specific performance will be granted” and proceeds to state some of the particulars to be embodied therein.
This Court is of the opinion that the action of appellant in conveying to Brooks did in no wise affect the rights and liabilities as between appellant and appellee. The parties dealt with the agreement for deed as a divisible contract, so that as between Brooks and appellee there were separate contracts with appellant and as related to their performance as shown in this suit. The action of appellant in no way whatsoever supports appellee’s case for specific performance.
*397 With the elimination of the said conveyance to Brooks from consideration, we are concerned primarily with what transpired between the parties hereto after August 17th, the final date for performance stipulated in the agreement. Appellant contends that the contract could not be terminated without notice given by appellant that he exercised such option provided in the agreement and with this contention the Court must agree. Further the Court agrees with his argument that the contract still being in effect he was required to perform same, so that he could not repudiate the action of the escrow agent in delivering the deeds on September 18th and September 20th, and by accepting the payment.
On September 25th or 26th, appellee was informed by the escrow agent that appellant had given it instruction not to deliver any more deeds under the contract, although the record does not show that ap-pellee was informed that appellant had elected to terminate the contract.
Mr. Evans, President of appellee corporation testified that late in September, about the 26th he went to the escrow agent, ascertained the amount of the unpaid balance on the agreement and offered to pay same with the corporation’s check which he exhibited to Mr. Curliss (escrow agent’s employee who had handled previous delivery of deeds under this escrow) which offer was refused. Since at that time the agreement had not been terminated, appellee was entitled to performance and the payment which he offered should have been accepted and the deeds delivered. This all occurred several days prior to the letter written by appellant giving notice of termination.
After receipt of the letter of October 8th appellee offered to pay the remaining balance due for the portion of agreement assigned to it, but these offers were also refused. If appellant had not waived strict performance by reason of recognizing the contract as still in force on September 18th and 20th when he accepted payment for deeds then delivered without making any protest, then the notification by that letter was an effective termination of the' agreement, so that appellant was under no further obligation to recognize the agreement. As we interpret the findings and decree of the Chancellor, he made no decision on the effect of such letter for he applied the law applicable to a contract which terminates ipso facto on its expressed date for expiration without any exercise of option on the part of the seller. He made a finding that “The terms of the contract, and it is in the contract, expired in and of themselves on August 17, 1956, because it is provided that “the total amount due on or before eighteen months at six per cent per annum payable annually”.
There is a very serious question whether appellant did not by recognizing the continued existence of the contract by delivery of deeds on September 18th and 20th and his acceptance of payment for same thereby waive his right to terminate the contract without notifying appellee and affording it a reasonable opportunity to complete performance of its part of the contract, however, as we have decided that by reason of the tender of performance made by appellee prior to the termination, it was entitled to performance, and the decree will therefore be affirmed in that respect, it is unnecessary to decide the question of waiver.
Objection to the allowance of $875 in the decree is raised in Assignment of Error No. 1, which in part complains of requiring defendants to respond in damages to the plaintiff. In effect the provision in the decree offsetting and reducing the amount found to be due under the contract and to be paid upon performance by defendants “by the amount of Eight Hundred Seventy-five Dollars ($875.00), which sum represents a fair rental value of the property and improvements made by the plaintiff.which property and improvements thereon have been used and occupied by the defendants for a period of *398 seventeen and one-half (17i/£) months, said rental value being herein fixed at the rate of Fifty Dollars ($50.00) per month” amounts to an assessment of damages against defendants.
A number of special rules have been settled by the English decisions respecting the equitable mode of adjusting the compensation to one or the other of the parties in the case of delay, consisting generally of interest payable to the vendor, or of rents and profits, or an occupation value allowed to the vendee. These rules are, of course, based upon the forms of contract which prevail in that country. If when the time for completion arrives the purchaser is ready and willing to make his payment, but the vendor is unable to perform on his part because he has not yet perfected his title, and the completion is therefore postponed, it is highly just and equitable that the rents and profits accruing after that day, and up to the subsequent day, when the contract is carried into effect, should be allowed to the vendee in the settlement as an abatement from his purchase-price, or should be paid over to him; and sometimes, when the vendor has been much in fault it would be just that he should pay the vendee a sum as occupation rent for the premises, since from that day named for the completion, the vendee ought to have possession and in the receipt of the rents and profits. (Pomeroy’s Specific Performance of Contracts, pages 888 and 889)
After a discussion of the rule in England for adjusting compensation between the parties and pointing out that because of the difference in the provisions of the contracts used there and those in general use in the United States, such rules are not generally applicable here, the author then states that “the general rule is well settled that, where the contract is not completed until after the time stipulated for that purpose, but the court nevertheless decrees a specific performance, it will adjust the equities of the parties by placing them as far as possible in the same position which they would have occupied had the agreement been completed at the prescribed day, and to that end it will allow to the purchaser the rents and profits, and to the vendor interest upon the purchase-price from and after that date.” Section 429, supra.
Finding no error in the record, we affirm the lower court.
Affirmed.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.