468 So.2d 1094 (1985)
SHELTER CORPORATION OF CANADA, LIMITED, Appellant,
v.
Daniel M. BOZIN, Appellee.
No. 84-545.
District Court of Appeal of Florida, Second District.
May 15, 1985.
*1095 Richard M. Treiser of MacLean, Amato, Arlen & Anderson, Naples, for appellant.
Michael R.N. McDonnell of McDonnell, Buckel & Berry, Naples, for appellee.
PER CURIAM.
Seller appeals a final judgment which offset the parties' claims for damages in buyer's successful action for specific performance of a contract to purchase realty. The trial court, without stating its reasons, adjudged that the buyer and seller's claims offset equally and neither would take anything from the other. For the reasons stated below, we find that the buyer did not establish damages. However, we also find that the seller wrongfully refused to perform the contract and, as such, should only be allowed to offset its losses against the damages which the innocent buyer established against it. Because the buyer established no damages, the at-fault seller had nothing against which to offset; therefore, we affirm the judgment.
On November 28, 1980, buyer agreed to purchase from seller a condominium in a Naples development. Buyer gave seller a deposit of $8,521.50. On December 8, 1980, ten days later, seller returned the deposit to buyer with a letter stating that it had disapproved the buyer pursuant to paragraph *1096 twelve of the purchase agreement. Paragraph twelve provided:
Purchaser agrees that an investigation may be made by the Seller to determine if Purchaser, in the sole opinion and discretion of the Seller, is a person of good character and generally desirable; and if within 30 days of execution of this Agreement by the Seller the Purchaser is found not to be acceptable, the Seller shall have the right to refund the Purchaser's deposit without interest thereon and thereafter, this Purchase Agreement shall be considered null and void and of no further force and effect.
Buyer, thereafter, brought this action for specific performance and damages. Seller counterclaimed for damages. The evidence established that there was no investigation made of buyer's character, and that the refusal to close the agreement was based upon some pecuniary interest of seller, rather than buyer's character. The trial court properly found that the contract provided that before seller could reject buyer an investigation of buyer's character had to be made. It, therefore, correctly awarded buyer specific performance and reserved jurisdiction to determine damages.
At the beginning of the hearing on damages, seller and buyer stipulated that seller's damages were $60,042.44. This amount reflected maintenance fees, property taxes, and interest at the legal rate of 12% per annum on the balance of the purchase price (less the deposit) of the condominium due from buyer to seller for the period from the original closing date to the date of judgment  the actual closing date.
The only factual issues of damages remaining for the trial court to determine were two items claimed by buyer.
First, buyer claimed damages for interest on his deposit from the date it was tendered to the actual closing date.
The second item of damages claimed by buyer was the net fair rental value of the condominium from the original date of closing to the actual closing date. To prove this item of damages, buyer offered the testimony of Johnson, a real estate appraiser, whom the court qualified as an expert. Johnson testified that the reasonable monthly rental value of the condominium was between $1,600.00 and $1,800.00 per month, and the seasonal monthly value was about $3,500.00 per month for a four-month season. He arrived at a four-month, rather than a three-month season, because he felt that if he were an owner he would prefer to rent on a four-month season basis. Johnson's rental estimates were based upon the rental value of a condominium at the time of the hearing in November, 1983. He had no evidence of the fair rental value of the condominium for the relevant period (December 22, 1980 [the original closing date], to July 27, 1983 [the actual closing date]), although he stated that residential rentals had not "increased dramatically" over the prior three years. Neither Johnson nor buyer knew of a single condominium in the development which rented for $1,600.00 a month on an annual basis.
Johnson also admitted this rental figure was not based upon comparable condominium rentals in the same development, but rather upon the rental value of a smaller condominium, a villa, and a sale-leaseback arrangement. He conceded that an opinion based upon numerous actual rentals of similar units within the same development would be more accurate than his opinion, but that he did not find such units.
Further, it appears from the record that Johnson did not take into account in arriving at the net fair rental value of the condominium the costs of furnishings, golf club membership, or the fact that the unit would be vacant during some of the year.
Buyer claimed that, based upon Johnson's testimony on the reasonable rental value of the condominium for thirty-one months, plus the interest on the deposit money, his damages were established between $55,375.00 and $77,646.00.
Seller objected unsuccessfully to Johnson's testimony. Seller then offered the testimony of its expert to contradict buyer's evidence on the net fair rental value of the condominium. According to Seller's expert, *1097 a real estate agent with experience in the rental of units in the development where the condominium in question is located, buyer's net fair rental value for the relevant period would have been approximately $10,355.00. This figure reflected the gross rents less expenses. Seller, on appeal, claims that the net rentals offset its interest damages only by $10,355.00, and that it should have a net recovery of approximately $50,000.00.
We begin our analysis by stating the general rule on awarding damages in an action granting specific performance:
`[The court] will adjust the equities of the parties by placing them as far as possible in the same position which they would have occupied had the agreement been completed at the prescribed day, and to that end it will allow to the purchaser the rents and profits, and to the vendor interest upon the purchase price from and after that date.'
Salinas v. Rieck & Fleece Builders Supplies, Inc., 109 So.2d 394, 398 (Fla. 2d DCA 1959) (quoting J. Pomeroy, Pomeroy's Specific Performance of Contracts § 429, at 892 (3d ed. 1926)). This rule is generally applied to cases where there has been a negligent delay, either by the seller in delivering or perfecting title, or, as in Salinas, where the buyer has failed to make payments in the time required. See Pomeroy, at §§ 419, 421, 427; Salinas, 109 So.2d at 396.
A further reading of Pomeroy, however, indicates an exception to this general rule where one party wrongfully refuses to perform the contract. See Pomeroy, § 429 at 892-893 n. (b). For example, in Crockett v. Gray, 39 Kan. 659, 18 P. 905, 907 (1888), the court stated:
`[T]he purchaser is entitled to the rents of the estate from the time fixed for completion, and the vendor is entitled to interest on the purchase money from the same time... . But this is liable to exceptions... . Where the interest is much more in amounts than the rents and profits, and the delay in completion is clearly made out to have been occasioned by the vendor, the court, to prevent the vendor from gaining an advantage by his own wrong, gives him no interest, but leaves him in possession of the interim rents.' Sections 889, 891, 892, Fry, Spec.Perf.; sections 429-431, Pom.Spec.Perf.; Davis v. Parker, 96 Mass. 94; King v. Ruckman, 24 N.J. Eq. 556; Worrall v. Munn, 38 N.Y. 137.
See also Mitchell v. Mutch, 189 Iowa 1150, 179 N.W. 440 (1920); Stack v. Hickey, 151 Wis. 347, 138 N.W. 1011 (1912); Bright v. Wilcox, 42 R.I. 404, 108 A. 177 (1919) (no interest allowed when both parties were at fault).
More recently, Williston on Contracts has stated "where interest exceeds the rents and profits and the delay was due to the vendor's fault, he will be allowed to retain the rents and profits but allowed no interest." 11 S. Williston, A Treatise on the Law of Contracts § 1430, at 877 (3d ed. 1968). See also Annot. 7 A.L.R.2d 1205, 1218 (1949).
Thus, the authorities are clear that, generally in an action granting specific performance, the purchaser is awarded the rents and profits and the seller is allowed interest on the purchase price from the original closing date to the actual closing date. The authorities are equally clear, however, that a seller at fault is not allowed to recover damages against an innocent purchaser in an amount which would exceed the damages claimed by the innocent purchaser.
We have found no Florida cases which address the above exception to the general rule; therefore, we adopt this exception because we find it to be sound and equitable.
In applying these rules to the case at bar, we first find that the buyer is not allowed to claim the interest on the refunded deposit money. The deposit was refunded within ten days. Buyer, therefore, had full use of the money for the entire period, except for the ten days.
Second, we find that while the trial court properly found Johnson qualified as *1098 an expert, the trial court erred in overruling seller's objection and motion to strike Johnson's testimony.
Johnson's opinion was irrelevant and, since not based on the actual or hypothetical facts in evidence, was admittedly unsound. His estimate of the fair rental value of the condominium was not based upon comparable units and did not reflect the rental value for the relevant time period. He omitted to take into account the costs of furnishing the condominium or providing the amenities. Further, he did not take into account the vacancy factor. These would all be necessary considerations in arriving at the "rents and profits" due the buyer under the general rule. The expert's testimony, therefore, was not relevant to the task of determining the "rents and profits," owed to buyer, from the original closing date to the actual closing date. It was error for the trial court to overrule the seller's objection and motion to strike the testimony. This is especially true, given that we are not privy to the extent to which the trial court relied on this testimony in arriving at its final judgment offsetting equally the claims for damages.
Because buyer is not allowed to claim interest on the refunded deposit and because his evidence on the fair rental value of the condominium should have been stricken as irrelevant, buyer has established no damages.
The only other evidence before the trial court was that of seller's expert, who testified that buyer's damages would be, at most, $10,355.00. Under the general rule, this amount would offset seller's damages of $60,042.44, resulting in a net recovery to seller of $49,687.44.
We, however, hold that seller, having wrongfully rescinded the contract because of its own pecuniary interest, is not entitled to such damages. Were we to apply the general rule, seller would be allowed to profit by its own wrongdoing. But, under the recognized exception to the general rule which we now adopt, where the seller is at fault, as here, it should only be allowed to offset its damages against those which the innocent buyer has established. Because buyer has not established any damages, seller has nothing to offset and cannot recover. In this case, seller is only allowed to keep the interim rents and profits, if any.
Accordingly, we affirm the trial court's judgment which left the parties where it found them by refusing to award damages to either.
AFFIRMED.
OTT, A.C.J., and CAMPBELL and FRANK, JJ., concur.