705 So.2d 1356 (1998)
Samuel G. CROSBY, et al., Petitioners,
v.
Patricia Jane JONES, et al., Respondents.
No. 88772.
Supreme Court of Florida.
January 15, 1998.
Lora A. Dunlap and Jamie Billotte Moses of Fisher, Rushmer, Werrenrath, Wack & Dickson, P.A., Orlando, for Petitioner.
*1357 Stuart C. Markman and Susan H. Freemon of Kynes, Markman & Felman, Tampa, for Respondent.
OVERTON, Justice.
We have for review Jones v. Crosby, 677 So.2d 379 (Fla. 2d DCA 1996), in which the district court held that a jury should decide whether attorney Samuel G. Crosby had exercised reasonable judgment in providing legal services to his client in an unsettled area of the law. We have jurisdiction based on express and direct conflict with Kaufman v. Stephen Cahen, P.A., 507 So.2d 1152 (Fla. 3d DCA 1987), in which the court determined that such an issue was appropriately resolved as a matter of law. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we conclude that the issue should have been decided as a matter of law because there was legal justification for Crosby's exercise of judgment.
The facts of this case are as follows. Patricia Jones was injured in an automobile accident. She and her husband retained Crosby to represent them in their suit against a number of individuals, including Judith Camus, the driver of the vehicle that collided with Patricia; Timothy Camus, the owner of the vehicle; and Gulf Coast Newspapers (Gulf Coast), Judith Camus's employer. The Joneses settled with the insurer of the Camus vehicle for the policy limits. Based on Crosby's advice, the Joneses released the Camuses through a document which specifically provided that the Joneses were not releasing Gulf Coast. Crosby then entered into a joint motion for dismissal with prejudice as to the Camuses.
Subsequently, the trial court entered summary judgment in favor of Gulf Coast, finding that the dismissal with prejudice of the Camuses constituted an adverse adjudication on the merits and barred any further action against Gulf Coast, a passive tortfeasor. On appeal, that decision was affirmed by the Second District Court of Appeal in Jones v. Gulf Coast Newspapers, Inc., 595 So.2d 90 (Fla. 2d DCA) (Jones I), review denied, 602 So.2d 942 (Fla.1992).
Based on the decision in Jones I, the Joneses sued Crosby for malpractice. The trial court entered summary judgment in Crosby's favor based on the doctrine of judgmental immunity and our opinion in JFK Medical Center, Inc. v. Price, 647 So.2d 833 (Fla.1994). In JFK we specifically disapproved Jones I and held that a dismissal with prejudice entered by agreement of the parties pursuant to settlement is not the equivalent of an adjudication on the merits that will serve as a bar to continued litigation against a passive tortfeasor. In other words, the legal action Crosby took on behalf of the Joneses was eventually determined to be correct.
On appeal from the trial court's summary judgment in Crosby's favor, the Second District Court of Appeal reversed. The district court reasoned that the trial court erroneously focused on the legal principles behind Crosby's actions rather than on whether he should have acted as he did. Jones v. Crosby, 677 So.2d 379 (Fla. 2d DCA 1996) (Jones II). The district court concluded that, at the time Crosby made his decision, the law was unclear in this area and that it was up to a jury to determine whether Crosby exercised reasonable judgment in deciding to sign the dismissal with prejudice and whether his actions fell below the applicable standard of care.
We accepted jurisdiction of Jones II based on express and direct conflict with Kaufman v. Stephen Cahen, P.A., 507 So.2d 1152 (Fla. 3d DCA 1987). Kaufman involved a malpractice action in which, originally, the case law indicated that the wrongful death statute of limitations applied to the facts in that case. Before suit was filed, this Court determined that the medical malpractice statute of limitations deadline applied rather than the wrongful death statute. At the time of that decision, the medical malpractice statute had run but the wrongful death statute had not. Thus, the action, under our decision, was barred. In the legal malpractice action that followed, the Third District Court of Appeal concluded, as a matter of law, that an attorney cannot be held liable for reaching a conclusion as to a controversial point of law, which, by subsequent decision, is proven to be erroneous.
*1358 Crosby asserts that the trial judge properly granted summary judgment in his favor in this case because the question of whether Crosby properly followed the law at the time of filing is a question of law not fact. He further contends that even if the law was conflicting, the summary judgment was proper based on the doctrine of judgmental immunity.[1]
Florida has long held that an attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill, and dispatch. Weekley v. Knight, 116 Fla. 721, 156 So. 625 (1934); Riccio v. Stein, 559 So.2d 1207 (Fla. 3d DCA 1990). This does not mean, however, that an attorney acts as an insurer of the outcome of a case. Good faith tactical decisions or decisions made on a fairly debatable point of law are generally not actionable under the rule of judgmental immunity. Meir v. Kirk, Pinkerton, McClelland, Savary & Carr, P.A., 561 So.2d 399 (Fla. 2d DCA 1990) (doctrine of judgmental immunity applied to bar malpractice action where attorney error related to fairly debatable point of law); Kaufman (attorney not liable for reaching conclusion as to controversial point of law that is subsequently proven to be erroneous). Most other jurisdictions that have considered the issue agree. See Herston v. Whitesell, 348 So.2d 1054 (Ala. 1977); Martin v. Burns, 102 Ariz. 341, 429 P.2d 660 (1967); Davis v. Damrell, 119 Cal. App.3d 883, 174 Cal.Rptr. 257 (1981); Berman v. Rubin, 138 Ga.App. 849, 227 S.E.2d 802 (1976); Citizens' Loan Fund & Savings Ass'n v. Friedley, 123 Ind. 143, 23 N.E. 1075 (1890); Martinson Mfg. Co. v. Seery, 351 N.W.2d 772 (Iowa 1984); Muse v. St. Paul Fire & Marine Ins. Co., 328 So.2d 698 (La. Ct.App.1976); Meagher v. Kavli, 256 Minn. 54, 97 N.W.2d 370 (1959); Gimbel v. Waldman, 193 Misc. 758, 84 N.Y.S.2d 888 (Sup.Ct. 1948); Hodges v. Carter, 239 N.C. 517, 80 S.E.2d 144 (1954); Collins v. Wanner, 382 P.2d 105 (Okla.1963); Hansen v. Wightman, 14 Wash.App. 78, 538 P.2d 1238 (1975). See also 7A C.J.S. Attorney and Client § 257 (1980).
The rule of judgmental immunity is premised on the understanding that an attorney, who acts in good faith and makes a diligent inquiry into an area of law, should not be held liable for providing advice or taking action in an unsettled area of law. As one court has stated:
As a matter of policy, an attorney should not be required to compromise or attenuate an otherwise sound exercise of informed judgment with added advice concerning the unsettled nature of relevant legal principles. Under the venerable error-in-judgment rule, if an attorney acting in good faith exercises an honest and informed discretion in providing professional advice, the failure to anticipate correctly the resolution of an unsettled legal principle does not constitute culpable conduct... In short, the exercise of sound professional judgment rests upon considerations of legal perception and not prescience.
Davis v. Damrell, 119 Cal.App.3d 883, 174 Cal.Rptr. 257, 260-61 (1981).
At the time Crosby entered the dismissal in this case, this Court had clearly stated that section 768.041(1), Florida Statutes (1973), abolished the common law rule that a discharge of one joint tortfeasor discharged all other tortfeasors. Sun First Nat'l Bank v. Batchelor, 321 So.2d 73 (Fla.1975). As we stated in quashing the district court's decision in Jones I, the public policy of Florida is to encourage settlements; to hold that a voluntary dismissal with prejudice of the active tortfeasor pursuant to a settlement bars any action against the passive tortfeasor would compromise that public policy. JFK. Our holding in both Batchelor and JFK is consistent with the position enunciated by the Restatement (Second) of Judgments, section 51 (1982).
When Crosby entered the dismissal with prejudice, our decision in Batchelor was over ten years old, the Restatement and the case law in Crosby's own district supported his *1359 action,[2] and the only case law to the contrary was the opinion issued outside of Crosby's district in Walsingham v. Browning, 525 So.2d 996 (Fla. 1st DCA 1988). Additionally, as noted by the district court in Price v. Beker, 629 So.2d 911 (Fla. 4th DCA 1993), approved, 647 So.2d 833 (Fla.1994), the authorities cited in Walsingham did not support the district court's holding in that case.
Although, in light of Walsingham, the law on this issue could have been construed to be unsettled at the time Crosby entered the dismissal, the law was strongly in his favor and the law of his own district supported his action. The fact that the Second District in Jones I relied on Walsingham in finding that the dismissal barred the subsequent claim against the passive tortfeasor should not subject Crosby to a malpractice claim or require him to defend his action before a jury. This is exactly the type of situation that the error-in-judgment rule was designed to cover. Thus, a contrary conclusion would effectively eliminate the error-in judgment doctrine in this state.
Further, we conclude that there was no duty to inform the Joneses of the conflicting case law on this issue under these circumstances. As noted above, "[a]s a matter of policy, an attorney should not be required to compromise or attenuate an otherwise sound exercise of informed judgment with added advice concerning the unsettled nature of relevant legal principles." Davis, 174 Cal. Rptr. at 260. Attorneys cannot be placed in the position of having to accept direction from clients on intricate interpretations of the correct or current state of the law. The attorney, not the client, is the individual trained to interpret the law. This does not mean that an attorney should never be required to inform a client regarding a conflict in the law; however, when an interpretation has been made as to the state of the law in a given district and that interpretation has a proper basis of support, an attorney should not be required to compromise a reasoned judgment by having to factor into the judgment the client's reasoning on a fine point of law.[3] For these reasons, we conclude that the trial judge correctly entered summary judgment in Crosby's favor under the circumstances of this case.
Accordingly, we quash the district court's decision in this case and direct that the trial court's summary judgment be affirmed. We also approve the opinion in Kaufman.
It is so ordered.
KOGAN, C.J., SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] As an additional issue, Crosby argues that Florida Rule of Civil Procedure 1.540, regarding setting aside a judgment, is inapplicable under the facts of this case. That issue is not pertinent to the conflict before this Court and we do not address it.
[2] See Vasquez v. Board of Regents, 548 So.2d 251 (Fla. 2d DCA 1989); Hertz Corp. v. Hellens, 140 So.2d 73 (Fla. 2d DCA 1962).
[3] Notably, at least one Florida court has determined that an attorney does have the responsibility to inform a client of a potential change in the law that may adversely affect the recommended action. Stake v. Harlan, 529 So.2d 1183 (Fla. 2d DCA 1988). However, in that case, a divided court reached this conclusion because the issue was pending on a certified question before this Court at the time the attorney rendered the advice; thus the attorney had the duty to inform the client that issue would soon be decided by a higher court. That is not the case here.