819 So.2d 182 (2002)
Richard HAISFIELD; Randy Haisfield; and Marc Haisfield, individually; Richard Haisfield, Randy Haisfield, Marc Haisfield and Randy Haisfield as Trustee under Haisfield Children Irrevocable Trust dated August 27, 1986, and as general partners of Haisfield Enterprises of Florida, a Florida general partnership; Richard Haisfield as Trustee, and as general partner; Richard Haisfield as Trustee of the Richard Haisfield Irrevocable Trust dated March 13, 1980 and as general partner of Haisfield Partnership, a Florida general partnership; Richard Haisfield, as general partner of RH Properties Company of Florida, a Florida general partnership, Appellants,
v.
FLEMING, HAILE & SHAW, P.A., a Florida professional association; and Squire, Sanders & Dempsey, et al, Appellees.
No. 4D01-1008.
District Court of Appeal of Florida, Fourth District.
May 15, 2002.
Rehearing Denied June 20, 2002.
*183 Marshall J. Osofsky of Moyle, Flanigan, Katz, et al., West Palm Beach, for appellants.
Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., and Allen R. Tomlinson of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for Appellees-Squire, Sanders & Dempsey, et al.
STONE, J.
Appellants (Haisfield) sued Squire, Sanders & Dempsey (SS & D) for legal malpractice. We affirm the summary judgment in favor of SS & D based on the defense of "judgmental immunity."
In 1988, Haisfield entered into a deposit receipt contract to purchase commercial real property from Peabey, with a deposit of $300,000. The contract contained an "exclusive remedy" clause which provided that, in the event that the purchaser, Haisfield, determined any representations contained in the contract to be untrue prior to the closing, Haisfield's only remedy would be "to terminate this Agreement and to receive a refund of the Deposit."
The law firm of Fleming, Haile & Shaw (FH & S) represented Haisfield in that transaction. Prior to closing, Haisfield learned of an alleged misrepresentation by Peabey. When confronted with Haisfield's discovery, Peabey offered to refund his deposit. Haisfield declined this offer and insisted upon obtaining the property at a reduced price. His attorney, Robert Haile, was instructed to explore "every available avenue of redress" for purposes of effectuating this goal, although Haisfield denies having insisted on pursuing litigation.
The record reflects that FH & S communicated, orally and in writing, possible approaches Haisfield could take in furtherance of his goal. In a letter dated September 21, 1988, FH & S proposed several options for Haisfield to consider. The first option was to seek rescission of the contract together with compensatory damages. The letter warned that if he chose the option of "reformation [of the contract] and abatement of purchase price," it would be difficult for a court to assign a specific *184 monetary value to allow him an abatement. Haisfield was also told that "there is a risk involved in filing a lis pendens" if a court determines it was not filed in good faith but was filed for the purpose of tying up the property. The letter stated, "it is difficult to predict what the amount of the loss would be ... you could be held liable for loss profits and damages sustained by the Seller due to any lost opportunities to sell the property...."
While FH & S recognized that there was no reported Florida case applying the remedy of specific performance with abatement to facts similar to those at hand, there was also no Florida law prohibiting extension of that remedy. Therefore, the firm believed a good faith argument could be made that the remedy should be extended.
Haisfield consulted four law firms prior to filing suit against Peabey. Those firms instructed him to file the notice of lis pendens against the subject property. In his deposition, Robert Haile reported that he warned Haisfield that the likelihood of success was slim and the risk substantial. However, Haisfield asserted, in his deposition, that his goal was to either own the buildings or get his $300,000 deposit back. How this result could be achieved was of little concern to Haisfield; as he repeatedly pointed out, he was merely a businessman and, as such, he left the legal matters to his attorneys. Although he could not recall the specifics of discussions in which the attorneys expressed concerns regarding the remedy of specific performance with abatement and/or the wrongful filing of a lis pendens, he did remember being advised of several legal options available and claimed his attorneys told him he had a good case.
FH & S brought in SS & D to handle the litigation. SS & D filed suit against Peabey for specific performance, damages for fraud, and an abatement in the purchase price. It also filed a notice of lis pendens.
Peabey filed a motion to dismiss and motion to dissolve the lis pendens before Judge Williams in December 1988. He reviewed the limitation of remedies provision in the contract and concluded that those limitations would not apply in the event of a fraudulent misrepresentation, as was alleged by Haisfield. Judge Williams' colloquy with counsel indicated he perceived the enforcement of the exclusive remedy provision as fairly debatable. As a result, Judge Williams denied Peabey's motion to dismiss, refused to dissolve the lis pendens, and set a lis pendens bond at $2.5 million.
Peabey subsequently filed a motion for judgment on the pleadings before a second judge assigned to the case, raising essentially the same arguments as it had in its prior motion to dismiss. This time, the judge granted Peabey's motion and we affirmed without opinion. See Haisfield v. Peabey Assocs., 569 So.2d 454 (Fla. 4th DCA 1990). Peabey then recovered a judgment against Haisfield for the wrongful filing of lis pendens.
When FH & S filed suit against Haisfield for payment of attorney's fees, Haisfield responded with a counterclaim (which it subsequently dismissed) and a third party complaint against SS & D for malpractice.
In granting SS & D's motion for summary judgment based on the doctrine of judgmental immunity and denying Haisfield's summary judgment motion, the trial court was persuaded by the fact that SS & D did not assure Haisfield that the theories on which they were bringing the action were winners and that Haisfield was warned of the risks associated with pursuing litigation. The court also found that *185 Haisfield had been told that his attorneys would be arguing for an extension of the law and concluded that Haisfield was provided with "professional opinions of his options and prospects so he could make informed business decisions." The trial judge noted that Florida law did not specifically prohibit an action for specific performance with abatement of the purchase price under facts as in this case and, therefore, seeking that equitable remedy was not contrary to settled law.
Before an attorney claiming the defense of "judgmental immunity" may prevail, the attorney must show that (1) the legal authority supporting the asserted cause of action was "fairly debatable" or "unsettled," and (2) that she or he acted in good faith and made a diligent inquiry into the unsettled area of law. Crosby v. Jones, 705 So.2d 1356, 1358 (Fla.1998). An "unsettled" issue of law is one that has not yet been determined by the state's court of last resort and on which reasonable doubt may be entertained by wellreasoned lawyers. Hodges v. Carter, 239 N.C. 517, 520, 80 S.E.2d 144, 146 (1954).
Haisfield contends that, as a matter of law, SS & D was not entitled to the defense of "judgmental immunity," because the remedy they sought to litigate, specific performance with abatement of the purchase price, was not an "unsettled" area of law. We note that "good faith" is not in issue here and that whether legal authority is "unsettled" is a question of law, not an issue of fact. See Crosby, 705 So.2d at 1359. Haisfield points out that the remedy of specific performance has been granted only where the seller of land cannot convey either the quantity of land or the quality of the estate for which it was contracted. See Black v. Clifton, 284 So.2d 465 (Fla. 4th DCA 1973); Stevens v. Gray, 217 So.2d 350 (Fla. 4th DCA 1969); Gross v. Keystone Point, Inc., 115 So.2d 426 (Fla. 3d DCA 1959).
Here, neither the quantity of land nor the quality of title was implicated. Instead, SS & D argued that Haisfield was entitled to specific performance with abatement of the purchase price because of the alleged diminution in value of the property caused by Peabey's misrepresentation as to an anchor tenant's departure from the property.
The remedy of specific performance with abatement has been extended where neither specific performance nor damages, alone, provides a sufficient remedy. See Presley v. Worthington, 53 So.2d 714 (Fla.1951)(granting "partial performance" which included conveyance of the property with abatement of the purchase price where seller/contractor refused to finish construction after buyer had already moved in just because he considered buyers "undesirable members of the community"); Salinas v. Rieck & Fleece Builders Supplies, Inc., 109 So.2d 394 (Fla. 2d DCA 1959)(granting specific performance and damages to be off-set by a reduction in purchase price for vendor's wrongful refusal to perform contract for real estate); Weber v. White, 102 So.2d 736, 736 (Fla. 3d DCA 1958)(granting specific performance with abatement of the purchase price where vendors could not fully perform contract by removing fence from property).
In this case, the argument set forth by SS & D was not contrary to settled law, although the judge ultimately refused to extend the law in Haisfield's case. An attorney is not liable for malpractice simply for losing a case. Crosby, 705 So.2d at 1358.
In Crosby, the supreme court affirmed a summary judgment in favor of Crosby, the attorney defending against a malpractice suit, concluding that he had exercised reasonable judgment in providing legal services *186 to his client in an unsettled area of the law. 705 So.2d at 1357.
Crosby had encouraged his clients to release one tortfeasor from liability by dismissing their case against it with prejudice. Unfortunately, the trial court found that dismissal with prejudice against one party barred further action against the second tortfeasor. At the time of Crosby's actions, the Restatement supported his position and the only contrary opinion was outside of his district. However, the court in his district also opted for the contrary approach, resulting in the legal malpractice suit. Id.
While Crosby's motion for summary judgment was granted based on the defense of judgmental immunity, the Second District reversed, concluding that the question of whether Crosby exercised reasonable judgment should be left to the jury. In upholding the trial court's summary judgment and reversing the Second District, the supreme court held that the issue was a matter of law because there was legal justification for Crosby's exercise of judgment. Id. The supreme court noted that, under the circumstances of the case, Crosby had no duty to inform his clients of the conflicting case law, reasoning that:
[a]ttorneys cannot be placed in the position of having to accept direction from clients on intricate interpretations of the correct or current state of the law....[w]hen an interpretation has been made as to the state of the law in a given district and that interpretation has a proper basis of support, an attorney should not be required to compromise a reasoned judgment by having to factor into the judgment the client's reasoning on a fine point of law.
Id. at 1359.
We recognize that in Crosby, there was law to support Crosby's decisions before the district court of appeal decided to take a different position, whereas, in the instant case, the law was silent as to whether the remedy was applicable. Nevertheless, we conclude that the legal theory pursued by SS & D was "unsettled," as it had not yet been decided by the supreme court.
We have considered DeBiasi v. Snaith, 732 So.2d 14, 16 (Fla. 4th DCA 1999), and deem it distinguishable. There, the trial court granted summary judgment based on judgmental immunity after finding the language of the rule at issue "sufficiently ambiguous." Id. at 15. In reversing summary judgment, this court opined that mere ambiguity of a rule of procedure did not equate to a finding that the law was "unsettled" or "fairly debatable." Here, however, the law was not simply "ambiguous" as was the rule of procedure in DeBiasi; rather, it had not yet been determined; hence, it was "unsettled." This court has also refused to enforce an exclusive remedy provision where it finds that such provision is unreasonable. See Ocean Dunes of Hutchinson Island v. Colangelo, 463 So.2d 437 (Fla. 4th DCA 1985). In the instant case, it was questionable as to whether the exclusive remedy clause would have been enforced where Haisfield asserted Peabey's misrepresentation amounted to fraud. See Banks v. Pub. Storage Mgmt., Inc., 585 So.2d 476 (Fla. 3d DCA 1991).
We have also considered Haisfield's assertion that there are issues of fact as to what was said to him and as to what instructions he gave his attorneys. However, upon our review of the record, it is clear that Haisfield's contention that he was not sufficiently instructed on the law is not a genuine issue of material fact as the only issues before the trial court were whether, as pled, he had been informed of the exclusive "nature of the purchase and sale agreement provision" and whether SS & D was entitled to judgmental immunity.
*187 Viewing the facts in the light most favorable to Haisfield, it was "fairly debatable" as to whether a court would apply the remedy of specific performance with abatement to cover the facts of Haisfield's case. We conclude the defense of "judgmental immunity" bars Haisfield from pursuing his malpractice action against SS & D.
Therefore, the judgment is affirmed.
SHAHOOD and TAYLOR, JJ., concur.