STONE, J.
We reverse the summary judgment entered in favor of the appellee/attorneys, except as to the appellee L. Martin Flanagan, because the record reflects that there are substantial fact issues to be resolved by trial. Susan Sauer sued her attorneys for failure to properly advise her regarding the risks involved in rejecting a settlement offer. She claims that, based on their negligent advice, she rejected a million dollar offer of judgment. Sauer asserts that her attorneys negligently informed her, or failed to inform her, of the risks of not accepting the offer of judgment, misinformed her, and failed to properly advise her. The trial resulted in a defense verdict and a judgment for attorney’s fees and costs was entered against her based on her rejection of the offer of judgment.
Sauer suffered injuries when she slipped and fell while working in the store where she was employed. She retained the law firm of Flanagan and Maniotis, P.A. to represent her in a negligence action against the store’s cleaning service. Sauer claimed that the cleaning service waxed the floors the night before the accident and spilled floor wax on the carpeting, causing her to fall.
When Sauer first met with her attorneys, she believed her ease to be a minor one and that she would only miss a few weeks of work with a foot injury. She later developed reflex sympathetic dystrophy, which rendered her totally unablé to work and had a serious adverse impact on her life.
Sauer stated in her deposition that her attorneys repeatedly told her that there was no way they were going to lose at trial and that she was going to win more than a million dollars. According to Sauer, Ma-niotis discussed the offer with her, telling her that after she paid her attorney’s fees and paid back worker’s compensation, she’d be “stuck with pennies,” and that it would be ridiculous to take the offer.
Sauer also stated that Maniotis told her that it was going to be “an open and shut case” and that “[tjhere was no way I was going to lose this case.” “The only time he said anything different, he said there’s always that slight percentage that something screwy is going to go on so I can’t put it down in writing but I guarantee you this right now I’m ninety-nine percent sure that this ease is going to be won.” She testified that Maniotis told her that there was no reason to accept the offer since they were going to win the case at trial and that there was no potential downside in rejecting the offer.
Sauer stated that when she, and her mother, and sister asked Maniotis whether there was a chance that a jury could find against her, Maniotis allegedly stated:
There’s always that one in a million chance that some fluke strange thing can happen and you’d lose but it’s not going to happen here. I can’t put it down — I said, You need to put that down in writing, kind of joking. He said, no, but I can tell you right now I’m ninety-nine point nine percent sure we’re going to win this case.
Sauer also stated that Maniotis told her that she would be “crazy” to take the million dollar offer.
Sauer also claims that Maniotis never spoke to her about the risks of going to trial or that she could get less than the million dollars. Their discussions regarding how much she could win were always in the millions. Sauer further testified that when she asked Maniotis whether she could be responsible for paying opposing counsel’s attorney’s fees if they lost, Ma-niotis told her “there was definitely no way that would ever happen.”
We recognize that Maniotis not only denies making the statements alleged by Sauer, he also testified as to his recollec *1081 tion of the advice and information he gave her and her role in reaching the decision to reject the offer. He wrote her a letter confirming the decision to reject the offer in which he stated that:
We have discussed the pros and cons of rejecting the offer (should this occur) many times throughout the litigation. The Defendant finally offered the policy limits, but far too late. You recognize that there are no guarantees, but both Martin and I believe you will probably get a verdict in excess of $1 million.
Although this letter may be significant evidence favorable to the attorneys, it does not mandate that the court disregard substantial fact issues and enter summary judgment as a matter of law.
Depositions were also taken of expert witnesses; Goodwin on behalf of the plaintiff, and Burman on behalf of the defendant. Burman acknowledged that if Ma-niotis did not review the pros and cons of rejecting the offer with Sauer, then he committed malpractice. He further stated that if Maniotis told Sauer, as she testified, that chances of her getting a substantial verdict was 99% and that if she lost it would be fluke, it would “not only be malpractice, that [would be] one of the stupidest things I’ve ever heard a trial lawyer with any sense say.”
Goodwin testified that if Maniotis advised his client that she had a 99% chance of winning the case, then that would constitute negligence. Goodwin believed that Sauer’s attorneys failed to properly prepare the ease by failing to have experts as to the standard of care in cleaning methods and by failing to have experts examine Sauer’s shoe in order to analyze the substance on it. He also stated that her attorneys should have evaluated the case as a difficult liability case based on an eyewitness’ inconsistent testimony. He stated that the attorneys failed to fully, comprehensively, and candidly explain to Sauer the hurdles and barriers to a successful recovery in this case in order for her to make an informed decision regarding the million dollar settlement offer. The failure to communicate these problems to Sauer led her to be misinformed. He also testified that Sauer should have been told that she could be faced with a judgment for attorney’s fees if she rejected the offer of judgment.
Appellees, in addition to arguing that there are no genuine issues of fact, contend that the defense of “judgmental immunity” applies in these circumstances. Appellees seek to apply a broad principal of judgmental immunity to settlement recommendations. They argue that attorneys should be insulated from liability because they are, of necessity, only making a “judgment call” in advising that the client reject a settlement offer. In this case, Appellees seek such immunity notwithstanding any validity to the claim that they breached a duty of reasonable care to their client in misleading her and failing to properly advise and furnish her with the information necessary for her to make an informed decision.
In Crosby v. Jones, 705 So.2d 1356, 1358 (Fla.1998), the Florida Supreme Court recognized that although an attorney may be held liable for damages where the attorney fails to act with a reasonable degree of care, skill, and dispatch, tactical decisions made in good faith or “decisions made on a fairly debatable point of law are generally not actionable under the rule of judgmental immunity.” “The rule of judgmental immunity is premised on the understanding that an attorney, who acts in good faith and makes a diligent inquiry into an area of law, should not be held liable for providing advice or taking action in an unsettled area of law.” See id.
In Crosby, the court recognized that the attorney had no duty to inform his clients of conflicting case law. The court concluded that the issue of whether the attorney exercised reasonable judgment was to be resolved as a matter of law.
We note that, unlike Crosby, this case does not involve the exercise of reasonable judgment in an unsettled or disputed area of law. This court, in DeBiasi v. Snaith, *1082 732 So.2d 14 (Fla. 4th DCA 1999), reversed a summary judgment entered in favor of a defendant lawyer where the trial court held that the alleged negligence,- involving an untimely appeal, was excused under the doctrine of judgmental immunity. In reversing, we acknowledged that the appellate rule violated by the lawyer presented some degree of ambiguity, but held that “mere ‘ambiguity of a rule’ of procedure, without more, does not equate to the somewhat more amorphous realm of ‘fairly debatable’ or ‘unsettled area of law’ to which the doctrine of judgmental immunity is applied.” See id. 732 So.2d at 16.
We recognize that courts in some other jurisdictions have extended the rule of judgmental immunity to include circumstances involving settlements, offers, or recommendations. However, those opinions are, in any event, inapposite under the circumstances of this case. See, e.g., Glenna v. Sullivan, 310 Minn. 162, 245 N.W.2d 869 (1976)(attorney’s decision to accept what the client believed to be an inadequate settlement offer was based on insufficient or inaccurate medical information. Attorney not liable for mistakes in judgment so long as he acts in the honest belief that his advice is well-founded and in the best interests of his client). However, we deem such reasoning inapposite here.
We can discern no basis for concluding that an attorney is insulated from liability for failing to exercise ordinary skill and care in resolving settlement issues. See Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A., 555 So.2d 455 (Fla. 2d DCA 1990)(cause of action for malpractice stated where plaintiffs alleged that they had been forced into settlement because of their attorney’s failure to adequately prepare the case). The importance of settlement to clients and to society mandates that we recognize that an attorney has a duty to utilize ordinary skill and knowledge in advising the client. See Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58, 64. (1989); see also Thomas v. Bethea, 351 Md. 513, 718 A.2d 1187, 1194 (1988)(“The principle that a lawyer may be held liable for negligence in handling of a case that was ultimately settled by the client, whether based on deficiencies in preparation that prejudiced the case and more or less required a settlement or on a negligent evaluation of the client’s case, has been accepted by nearly every court that has faced the issue.”); Ziegelheim v. Apollo, 128 N.J. 250, 607 A.2d 1298, 1304 (1992)(reversing summary judgment for the lawyer, the court opined “[ajlthough we encourage settlements, we recognize that litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we insist that the lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks.”).
We do not resolve here whether there may be circumstances in which the concept of judgmental immunity may go farther than recognized in Crosby. It is sufficient to conclude that judgmental immunity is not applicable where, as here, there is evidence, if believed, that the attorneys fell below the standard of reasonable care in representing their client.
We remand for further proceedings. As to the appellee L. Martin Flanagan, we affirm.
POLEN and STEVENSON, JJ., concur.