DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AIR TURBINE TECHNOLOGY, INC.,**
Appellant,

v.

**QUARLES & BRADY, LLC, QUARLES & BRADY, LLP,**
and **RICHARD HORN,**
Appellees.

No. 4D14-110

[June 3, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lucy Chernow Brown, Judge; L.T. Case No. 502011CA005972XXXXMB-AH.

Adam S. Hall and Colleen L. Smeryage of Hall, Lamb and Hall, P.A., Miami, and June G. Hoffman of Fowler White Burnett PA, Fort Lauderdale, for appellant.

David P. Ackerman and Lanelle K. Meidan of Ackerman, Link & Sartory, P.A., West Palm Beach, for appellees.

GROSS, J.

This is an appeal from a summary judgment for the defendant in a legal malpractice action that centered on an attorney's advice about his client's contractual exposure to the opposing party's attorney's fees under Florida law. Because the advice was in accord with the weight of Florida law, we hold there was no malpractice at all. To the extent that any of the challenged conduct could be seen as fairly debatable, the attorney's advice was protected by judgmental immunity. We therefore affirm the summary final judgment.

***Underlying Case***

Air Turbine Technology, Inc. is a Florida corporation that invents and manufactures power tools. In 1992, Air Turbine entered into an agreement ("Private Brand Agreement") with Atlas Copco Tools AB, which granted Atlas Copco a license to sell one of Air Turbine's tools throughout the

world, except for the United States and Canada. In return, Atlas Copco agreed not to disclose the technology covered by Air Turbine's patents.

Air Turbine terminated the Private Brand Agreement in 1993, ending the companies' relationship. In 1999, Atlas Copco entered into an agreement with another company to sell the tool under Atlas Copco's name. Air Turbine became aware of this product and believed it to be similar to the tool that was the subject of its Private Brand Agreement with Atlas Copco.

In 2001, Air Turbine hired Quarles & Brady and firm partner Richard Horn to initiate litigation against Atlas Copco. Simon Shane, chairman and corporate representative for Air Turbine, represented to Quarles & Brady that potential damages could exceed $20 million. Quarles & Brady took the matter on a contingency fee basis. Shane signed an engagement letter which contained this paragraph:

> Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning the litigation or various courses of action and the results that might be anticipated. Any such statement made by any partner or employee of our firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed by you as a promise or guarantee.

At the outset of litigation, Shane also provided Horn with a report from another law firm opining that Atlas Copco was infringing on Air Turbine's patent.

Quarles & Brady filed suit against Atlas Copco in the United States District Court for the Southern District of Florida. The complaint asserted six counts: patent infringement, violation of the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, fraud, breach of confidential relationship, and common law unfair competition. The complaint sought over $50 million in damages, including punitive damages. The complaint also contained a claim for attorney's fees.

*The "legal costs" provision of the Private Brand Agreement*

The Private Brand Agreement contained the following provision:

> In the event of dispute, the Party prevailing in any legal action arising out of this Agreement shall be entitled to receive its

legal costs and expenses in bringing any such action and enforcing any judgment, from the non-prevailing Party.

Shane was involved in negotiating the Private Brand Agreement with Atlas Copco. He requested the inclusion of the above language in the Private Brand Agreement to make sure that "we could recover our legal costs and expenses." However, Shane relied on Horn's advice that Air Turbine was not "exposed at all to legal fees" as a result of the federal court action. Shane was concerned that exposure to prevailing party attorney's fees in the event of a loss would be "far too much" for a small company like Air Turbine.

Shane expected Atlas Copco would vigorously defend the lawsuit and knew it was a possibility that Atlas Copco would make a claim for its legal fees. However, Shane said that Air Turbine would not "have entered into this litigation if we were exposed to legal fees." He asked Horn if legal fees was "an exposure we should worry about" and Horn told him, "No, you're not exposed to legal fees."

*The rejected settlement offer*

In 2002, Air Turbine rejected a $500,000 settlement offer from Atlas Copco. Horn advised Shane that the offer was a "very positive indication" that the offer would increase after discovery. In considering the offer, Shane heavily relied on Horn's reassurance that Air Turbine's exposure to Atlas Copco's attorney's fees "wasn't a risk."

*The Federal court trial on patent infringement and breach*
*of confidential relationship*

The federal district court granted summary judgment in Atlas Copco's favor on a majority of Air Turbine's claims, leaving only two claims for trial: (1) patent infringement for acts after suit was filed, and (2) breach of a confidential relationship. The pretrial stipulation noted Air Turbine's belief, consistent with Horn's advice, that attorney's fees were "not at issue" in the case. After a jury returned a verdict in favor of Atlas Copco on both claims, district court judge Kenneth Marra entered final judgment for Atlas Copco.

*Air Turbine appeals judgment; Atlas Copco moves for*
*recovery of attorney's fees*

Atlas Copco moved for recovery of $4.7 million in attorney's fees and approximately $850,000 in costs on three grounds: (1) paragraph 17 of the

Private Brand Agreement; (2) Florida's offer of judgment statute; and (3) the federal Lanham Act's prevailing party attorney's fee provision. Air Turbine appealed the judgment. The district court stayed Atlas Copco's motion for attorney's fees pending the outcome of the appeal. In 2005, the judgment was affirmed.

On remand, Atlas Copco renewed its motion for attorney's fees. Judge Marra denied Atlas Copco's request for fees, awarding only legal costs and expenses. The court held that under Florida law, the phrase "legal costs and expenses" in the Private Brand Agreement did not include attorney's fees. Judge Marra also rejected the fee request based on both the offer of judgment statute and the Lanham Act.

*Atlas Copco appeals denial of attorney's fees*

Atlas Copco appealed the denial of attorney's fees to the United States Court of Appeals for the Federal Circuit. In a 2-1 decision, that court reversed the denial of fees based on paragraph 17 of the Private Brand Agreement, holding that

> [a]lthough the disputed language could be subject to two interpretations, the most natural reading of paragraph 17 in light of the evidence of record is one that clearly expresses a mutual intent to provide for attorney's fees. The district court's implication and [Atlas Copco's] argument that attorney's fees can only be provided in contract by use of the exact words "attorney's fees," is not supported by Florida law.

*Air Turbine Tech., Inc. v. Atlas Copco AB,* 336 Fed. Appx. 986, 989 (Fed. Cir. 2009). The majority wrote that "extending 'legal costs and expenses' to attorney's fees is not an unnatural reading of the plain language of the contract." *Id.* The dissent pointed out that the case involved a question under Florida state law, "how to interpret the Florida cases addressing the question of what it takes to constitute an enforceable attorney fee provision." *Id.* at 990 (Plager, J., dissenting). The dissent wrote that

> [t]he Florida cases, as the majority grudgingly admits, are strict with regard to what qualifies. . . . The trial court concluded that the particular language in our case fails to meet the standard required by the Florida courts. Even if there were any real question about whether the trial court is correct—and in my view there is not—I would feel it appropriate to defer to the district judge's reasoned

explanation of what his state's law requires, and why the facts in this case do not meet that standard.

Picking at and distinguishing away cases on the basis of their different facts, without respecting their basic policy point, is not my view of how this case should have been decided.

*Id.*

On remand, Judge Marra entered a partial attorney's fees and costs award in the amount of $1,009,185.10 pursuant to the Private Brand Agreement. Horn did not hire an attorney's fee expert to oppose the fee motion. Air Turbine paid the attorney's fees and costs award.

*Legal Malpractice Claim*

In 2011, Air Turbine filed suit against Quarles & Brady and Horn for legal malpractice. Central to the main claims was Horn's "repeated advice that Air Turbine was not at risk of exposure to Atlas Copco's attorney's fees." It was this advice that primarily influenced Air Turbine's rejection of the $500,000 settlement offer. Air Turbine also asserted that it was malpractice to fail to hire an attorney's fee expert for the fees hearing before Judge Marra. The trial court granted a partial summary judgment on a portion of the case based on the statute of limitations[1] and another partial summary judgment based on judgmental immunity that resolved the remainder of the case. The trial judge, Judge Lucy Brown, commented that there was no showing that a fee expert would have made any difference in the outcome of the case.

### Horn's advice that there would be no exposure to attorney's fees followed the weight of Florida law

Preliminarily, it appears to us that no malpractice occurred. Under the great weight of Florida law, a contract that provides for recovery of only legal "costs" and "expenses" does not allow for recovery of attorney's fees. Because Florida is "settled" in the favor of Horn's advice, his advice was obviously the result of a proper exercise of skill and professional judgment, so he cannot have been negligent for providing it.

---

[1]Because we hold that there was no malpractice or that judgmental immunity applies, we do not address the statute of limitations issue.

Florida disfavors the award of prevailing party attorney's fees in civil cases. The state "follows the 'American Rule' that attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties." *Dade Cnty. v. Peña,* 664 So. 2d 959, 960 (Fla. 1995); *see also R.J. Reynolds Tobacco v. Ward,* 141 So. 3d 236, 238 n.5 (Fla. 1st DCA 2014) (discussing the "American Rule" in place in Florida). Fee shifting statutes and contractual provisions are contrary to the "American Rule." As a result, statutes awarding attorney's fees must be strictly construed. *See, e.g., Dade Cnty.,* 664 So. 2d at 960. Similarly, "'contractual provisions concerning attorney's fees must also be strictly construed.'" *Miller v. Miller,* 107 So. 3d 430, 432 (Fla. 4th DCA 2012) (quoting *Wendel v. Wendel,* 852 So. 2d 277, 282 (Fla. 2d DCA 2003)); *Williams v. Williams,* 892 So. 2d 1154, 1155 (Fla. 3d DCA 2005); *Venetian Cove Club, Inc. v. Venetian Bay Developers, Inc.,* 411 So. 2d 1323, 1324 (Fla. 2d DCA 1982). Strict construction of the "legal costs and expenses" provision in the Private Brand Agreement precludes any award of attorney's fees "because fees are not even mentioned in the paragraph." *Wendel,* 852 So. 2d at 282.

Under Florida law, "[t]he term 'costs' is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees." *Commercial Serv. of Perry, Inc. v. Campbell,* 861 So. 2d 1258, 1260 (Fla. 4th DCA 2003) (citing *Rose Printing Co. v. Wilson,* 602 So. 2d 600, 603 (Fla. 1st DCA 1992)); *Attorney's Title Ins. Fund, Inc. v. Landa-Posada,* 984 So. 2d 641, 643 (Fla. 3d DCA 2008) ("Costs recovered by a litigant do not include attorney's fees."); *Price v. Tyler,* 890 So. 2d 246, 253 (Fla. 2004) (construing the term "costs" in section 57.041, Florida Statutes (2001), as not including attorney's fees); *Zosman v. Schiffer/Taxis, Inc.,* 697 So. 2d 1018, 1019 (Fla. 3d DCA 1997). Similarly, "expenses" is a vague monetary term similar to "costs"; a policy of strict construction precludes the term "expenses" from being stretched to include attorney's fees. *See Wendel,* 852 So. 2d at 282 ("[L]ike the term 'costs,' the term 'expenses' is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees.").

Based on the above case law, Horn's advice to Air Turbine was dead-on under Florida law. The advice therefore breached no standard of care and cannot amount to malpractice as a matter of law. A well-reasoned lawyer would not entertain a reasonable doubt that the advice was correct at the time the advice was given. We agree with Judge Marra's analysis and that of the dissent in the Federal Circuit. The majority's approach in *Air Turbine* did not follow Florida law. *See Air Turbine Tech.,* 336 Fed. Appx. at 988-90. That the unexpected litigation result occurred in the Federal Circuit is not enough to impose liability as a result of the earlier advice.

Florida authority supported Horn's legal advice that Air Turbine did not face a significant risk of exposure to attorney's fees.

### *Judgmental Immunity in Florida*

Because the parties have argued this as a case of judgmental immunity, we address that issue.

It is well-settled in Florida "that an attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill, and dispatch." *Crosby v. Jones,* 705 So. 2d 1356, 1358 (Fla. 1998) (citations omitted). However, an attorney does not act "as an insurer of the outcome of a case." *Id.* Accordingly, "[g]ood faith tactical decisions or decisions made on a fairly debatable point of law are generally not actionable under the rule of judgmental immunity." *Id.* (citation omitted). This rule "is premised on the understanding that an attorney, who acts in good faith and makes a diligent inquiry into an area of law, should not be held liable for providing advice or taking action in an unsettled area of law." *Id.*

In order for an attorney to prevail on a claim of judgmental immunity, "the attorney must show that (1) the legal authority supporting the asserted cause of action was 'fairly debatable' or 'unsettled,' and (2) that she or he acted in good faith and made a diligent inquiry into the unsettled area of law." *Haisfield v. Fleming, Haile & Shaw, P.A.,* 819 So. 2d 182, 185 (Fla. 4th DCA 2002) (citing *Crosby,* 705 So. 2d at 1358). An issue of law is unsettled if it "is one that has not yet been determined by the state's court of last resort and on which reasonable doubt may be entertained by well-reasoned lawyers." *Id.* (citing *Hodges v. Carter,* 80 S.E.2d 144, 146 (N.C. 1954)). The determination of whether "legal authority is 'unsettled' is a question of law, not an issue of fact." *Id.* at 185. As Air Turbine argues, judgmental immunity is a flexible doctrine that protects attorneys who act in good faith from claims brought solely with the clarity of hindsight.

### *If Horn's advice on fee exposure was fairly debatable, then judgmental immunity applies*

If the absence of a Florida Supreme Court case construing a "legal costs and expenses" clause identical to the one in this case, or if the Federal Circuit's approach to "legal costs and expenses" is enough to render Horn's advice on fee exposure "fairly debatable," then judgmental immunity applies. A legal malpractice action should not succeed when "the attorney erred because an issue of law was unsettled or [fairly] debatable. The perfect vision and wisdom of hindsight is an unreliable test for determining

the past existence of legal malpractice." R. Mallen, *Recognizing and Defining Legal Malpractice,* 30 S.C.L. Rev. 203, 210 (1979); *see also Hanson v. Fowler, White, Burnett, P.A.,* 117 So. 3d 1127, 1133 (Fla. 3d DCA 2012) (finding that judgmental immunity did not apply but lawyer was nonetheless entitled to judgment in his favor where party "lost in federal court on remand not because of any tactical decisions on his lawyer's part, but because the District Court inexplicably refused to rely upon a prior ruling on an issue that had been raised by the parties, tried by consent at a bench trial, and left untouched by the appellate court").

Under the second prong of judgmental immunity, Horn had to establish he gave advice in good faith and made a diligent inquiry into Air Turbine's potential exposure to Atlas Copco's attorney's fees. Air Turbine does not allege that Horn acted in bad faith, but argues Horn did not research or look into the issue until after litigation had ended.

An attorney need not perform research on every issue during the course of litigation, but rather can rely on his honest belief and experience.

> An attorney who acts in good faith and in honest belief that his advice and acts are well-founded and in the best interest of his client is not answerable for a mere error in judgment or for a mistake in a point of law which has not been settled by the court of last resort in his state and on which reasonable doubt may be entertained by well-informed lawyers. . . .

*Proto v. Graham,* 788 So. 2d 393, 395 (Fla. 5th DCA 2001) (quoting *Kaufman v. Stephen Cahen, P.A.,* 507 So. 2d 1152, 1153 (Fla. 3d DCA 1987)). As set forth above, in Florida the contractual terms "costs" and "expenses" do not include attorney's fees unless the contract specifically defines them to include attorney's fees. Any experienced Florida commercial lawyer worth his salt would know this state of the law without extensive research or memoranda. Horn was not required to research an area of law with which he was familiar. In any event, an associate at Quarles & Brady confirmed Horn's belief with legal research after litigation had commenced. The associate concluded that "[a]ttorneys' fees are not specifically defined as an item of 'legal costs and expenses' under Paragraph 17 of the Private Brand Agreement. As such, Defendant's argument that 'legal costs and expenses' includes attorneys' fees is without support and will likely be rejected by the Court as [contrary] to Florida law." Horn reasonably believed there was no exposure to attorney's fees and subsequent research confirmed his belief.

*Judgmental Immunity where Horn did not retain attorney's fee expert*

Air Turbine also asserts the trial court erred in granting Horn judgmental immunity based on his decision to not hire a fee expert to oppose Atlas Copco's motion for attorney's fees.

"Good faith tactical decisions . . . are generally not actionable under the rule of judgmental immunity." *Crosby,* 705 So. 2d at 1358. "Attorneys cannot be placed in the position of having to accept direction from clients on intricate interpretations of the correct or current state of the law." *Id.* at 1359.

In Florida state courts, "'where a party seeks to have the opposing party in a lawsuit pay for attorney's fees incurred . . . independent expert testimony is required.'" *Robin Roshkind, P.A. v. Machiela,* 45 So. 3d 480, 481 (Fla. 4th DCA 2010) (quoting *Sea World of Fla., Inc. v. Ace Am. Ins. Cos., Inc.,* 28 So. 3d 158, 160 (Fla. 5th DCA 2010)). However, in federal court, the judge can determine the reasonableness of attorney's fees and an independent expert is not required. *See Centennial Bank v. Falke,* No. 5:12-cv-114-RS-EMT, 2013 WL4052452, at * 3 (N.D. Fla. Aug. 12, 2013); *Reis v. Thierry's Inc.,* No. 08-20992, 2010 WL 1249076, *1-2 (S.D. Fla. Mar. 25, 2010). This district has questioned the wisdom of the Florida practice of requiring independent experts instead of adopting the Federal approach:

> [W]e note as our profession matures and evolves, as it has over the past forty years, and continues to do so, our trial judges have become highly experienced in all aspects of litigation, often with knowledge equal to, or in some cases far superior to, that of those attorneys who are called upon to provide expert testimony as a "fees witness." . . . At the most basic level, we fail to see what, if any, "guidance" these "fees experts" actually provide to the well-versed trial judges of this state, who ultimately have the responsibility to determine, in their relatively unfettered discretion, whether the hours sought are reasonable . . . .

*Island Hoppers, Ltd. v. Keith*, 820 So. 2d 967, 972 (Fla. 4th DCA 2002), *disapproved of on other grounds by Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210 (Fla. 2003). We have recognized that an experienced civil judge has heard enough attorney's fee "testimony to qualify as an expert on the reasonable value of legal fees" in his or her community. *Id.* at 977 (Gross, J., concurring); *see also* Robert J. Hauser, et al., *Is Expert Testimony Really Needed in Attorneys' Fees Litigation?*, 77 Fla. B.J. 38 (Jan. 2003).

Horn made the tactical decision not to hire an expert witness on the issue of reasonableness of attorney's fees, taking into consideration that

(1) federal law did not require an independent expert; (2) federal judges have considerable discretion in making a fee award; (3) Judge Marra had served for years as a judge in Florida and "would be familiar with local rates and practices"; (4) Judge Marra was familiar with the underlying litigation, having presided over it through trial; and (5) hiring a fee expert would have been expensive for Air Turbine. The wisdom of Horn's decision was borne out by the ultimate fee award, which was just 21 percent of what Atlas Copco sought in fees.

The decision not to call a fee expert in federal court was the essence of a good faith tactical decision that is protected by judgmental immunity.

We therefore affirm the summary final judgment.

WARNER and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***