[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14064

_____

D.C. Docket No. 1:12-cv-21711-MGC

INLET CONDOMINIUM ASSOCIATION, INC.,

Plaintiff - Appellant,

versus

CHILDRESS DUFFY, LTD, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 19, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and WALTER,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable Donald E. Walter, United States Senior District Judge for the Western District of
Louisiana, sitting by designation.

This appeal requires us to decide whether Florida's judgmental immunity doctrine, which provides malpractice immunity to attorneys making "[g]ood faith tactical decisions or decisions [ ] on a fairly debatable point of law," *Crosby v. Jones*, 705 So. 2d 1356, 1358 (Fla. 1998), applies to a law firm's decision not to use a particular expert witness at trial in support of a hurricane damage claim. Although the post-*Crosby* decisions of Florida's intermediate courts of appeal do not appear to apply the doctrine consistently, we affirm because the district court's ultimate ruling is supported by the Florida Supreme Court's articulation of the doctrine and the interpretation and application of the doctrine by the Third District Court of Appeal, whose precedent would have governed had this diversity case been filed in state court.

## I

In 2007, Inlet Condominium Association, represented by Childress Duffy Ltd., filed a breach of contract lawsuit against Citizens Property Insurance Company seeking to recover for damages allegedly caused by Hurricane Frances in September of 2004. Inlet's windstorm policy with Citizens had a coverage limit of $21.9 million and a deductible of $1.095 million. Before the suit was filed, Inlet and Citizens had failed to settle their differences; Inlet had demanded a total of $4.6 million, but Citizens had only offered $750,000. When Inlet did not recover

all the damages it sought at trial, it filed this legal malpractice action against Childress Duffy.

## A

Inlet, located in New Smyrna Beach, was built in the 1980s and opened in 1986.  Its six elevators were installed by Otis Elevator Company.  According to Otis, those elevators have an average lifespan of 20 years.  Since August of 1999, Inlet had a maintenance and service contract with Otis.  That contract covered general repairs to the elevators necessitated by normal wear and tear.

Inlet's elevators, including their vents, were damaged during Hurricane Frances in September of 2004. After Hurricane Frances, and between October and December of 2004, Otis repaired Inlet's elevators to get them back to functioning capacity. Those repairs cost Inlet a little over $56,000.

Inlet reported its hurricane damage to Citizens in May of 2005. At first, Citizens refused to pay anything, maintaining that Inlet's damages did not exceed the policy's deductible. Inlet hired Dietz International Inc., a public adjuster, which in turn retained Dr. Anurag Jain.  Dr. Jain, a structural engineer consultant with wind expertise, has inspected several hundred buildings affected by hurricanes.

Dr. Jain visited Inlet in May of 2005 and October of 2006 to assess the damage caused by Hurricane Frances. By the time Dr. Jain was able to inspect Inlet's elevators, however, Otis had already repaired most of the physical damage

3

to the vents, and, to make matters worse, Inlet had failed to keep the damaged vents.

**B**

In February of 2009, Inlet executed a new contract with Otis to modernize the building's elevators. Discussions and negotiations regarding the elevator modernization project had been in the works since 1999, years before Hurricane Frances struck. Otis account representative Emily Ihde explained, based on her attendance at several Inlet board meetings, that the project was necessary because the elevator equipment was outdated, and it was time for modernization.

The 2009 contract quoted the cost of the modernization project at $1,511,078. Inlet provided a copy of the contract to Childress Duffy in April of 2009, about a month before the trial against Citizens began.

**C**

Inlet's lawsuit against Citizens proceeded to trial in June of 2009. One of Inlet's claims was for damage to its elevators. At trial, Childress Duffy presented evidence of the damage caused to the elevators by Hurricane Frances, including the testimony of several unit owners and Inlet board members regarding how the elevators functioned before the storm and how they functioned after the storm. For example, Myron Cutler, a unit owner and member of Inlet's board testified that the elevators worked well before Hurricane Frances, but after they were repaired

4

following the storm they were always out of service and repairs by Otis would only keep them working for a short period of time. Geoffrey Applegate, a former president of Inlet's board, also testified about the damage to the building and elevators. He said that Inlet paid $59,996.11 to Otis for repairs to the elevators, but explained that those repairs were not a permanent fix.

As proof of Inlet's damages with respect to the elevators, Childress Duffy introduced into evidence the 2009 modernization contract between Inlet and Otis. But when Mr. Applegate attempted to testify that the modernization project was necessary because Otis had informed him that other repairs would be unsuccessful in the long term, the trial court sustained Citizens' hearsay objection.

Dr. Jain, the wind expert and forensic engineer who initially inspected Inlet's hurricane damage, also testified regarding Inlet's elevator damage at trial. Dr. Jain explained that, during his inspection, he observed damage to the elevator vents, which created an opening where rain from the hurricane could have gotten inside the building. He opined that the water inside the elevator shaft got into the electronics and damaged the elevators to the extent that they stopped functioning. On cross examination, however, Dr. Jain admitted he was not an elevator expert or a mechanical engineer.

Citizens' primary defense in the case with respect to the elevators was that Inlet was requesting damages for replacements and repairs that the association

5

needed before Hurricane Frances. Citizens had deposed several individuals who could testify to the state of the elevators before the hurricane. Ms. Ihde had testified that the modernization project was needed because the elevator equipment was outdated. Barbara Garwood, another former Inlet board president, had stated in her deposition that she frequently used the stairs to get to and from her apartment at Inlet because the elevators were unreliable and in overall bad condition. Inlet's head of maintenance, David Dexter, stated in his deposition that before the storm Inlet had been having a lot of problems with its elevators. Inlet's corporate representative, Joseph Maddox testified that before Hurricane Frances, Otis had to service Inlet's elevators on a monthly basis. And the report of Citizens' engineering expert similarly indicated that the need for the elevator modernization and the elevator damage Dr. Jain testified to was "indicative of [the] elevators being poorly maintained in [the beachfront] environment as opposed to being related to storm damage."[1]

Citizens, however, did not ultimately need to put on any of this evidence in its own case concerning the elevator damage claim. At the close of Inlet's case, Citizens successfully moved for a directed verdict on Inlet's elevator damage claim.

---

[1] Citizens' engineering expert would have testified consistently with the report at trial.

6

Citizens argued that Inlet had failed to present sufficient evidence that the elevator damage was caused by Hurricane Frances, partly because Dr. Jain was not a qualified elevator expert and partly because Dr. Jain examined the damage after the initial repairs had already been made and the elevators were operative. The trial court granted Citizens' motion.  Although the trial court acknowledged that there was evidence of damage to the elevators, it explained Inlet had failed to present evidence that all of the elevators had to be completely replaced due to the storm: "Seems to me that you have got to show that all six [elevators] are broken and need to be repaired and there is no other way to repair them, so you should get brand new ones. . . . [Y]ou know, if they sink your seventeen-foot boat, you can't go out and get a forty-footer, you got to get a seventeen-footer.  I can't tell that from here."  In other words, the trial court ruled that there was insufficient evidence that any damage from Hurricane Frances required the complete replacement of the elevators. So Inlet's $1.5 million claim for elevator damage never reached the jury.

At the end of the trial, the jury awarded Inlet $3,335,610 in excess of its $1,095,000 deductible on its other (i.e., non-elevator related) hurricane damage claims.  The trial court subsequently awarded Inlet pre-judgment interest in the amount of $1,258,681.17. This total sum was more than Inlet would have received had Citizens accepted its $4.6 million settlement offer prior to trial.

7

The trial court entered final judgment on July 2, 2009.  Citizens appealed to the Fifth District, challenging only the trial court's award of pre-judgment interest. On May 6, 2010, following mediation, Inlet and Citizens resolved all matters for the sum of $1.825 million.  The Fifth District dismissed the appeal on June 1, 2010.

**D**

On May 4, 2012, Inlet sued Childress Duffy for legal malpractice in federal district court in the Southern District of Florida, alleging that the law firm should have presented expert testimony to support the claim for hurricane damage to the elevators.  After discovery, the district court granted Childress Duffy's motion for summary judgment.

The district court concluded that Inlet filed its malpractice action within Florida's two-year statute of limitations, *see* Fla. Stat. § 95.11(4)(a), because the action was filed within two years of the date that Inlet and Citizens executed the settlement agreement.  It also rejected Childress Duffy's argument that Inlet had abandoned its legal malpractice claim by settling with Citizens for $1.825 during the pendency of the appeal.

But the district court ruled that Childress Duffy was entitled to summary judgment based on Florida's doctrine of judgmental immunity.  Noting that Inlet had not claimed (or presented any evidence) that Childress Duffy had not acted in

8

good faith, the district court held that the matter in dispute—Childress Duffy's presentation of the claim for elevator damage—was a "fairly debatable" or "unsettled" area of law because there was no Florida case "requiring an expert on every element of damages, or a case forbidding an expert to attempt to opine in related fields, let alone a case requiring a particular expert in a particular field." According to the district court, there was no settled authority that Childress Duffy's "tactical decision to proffer a wind expert in lieu of a representative from Otis . . . or other engineering expert was prohibited." The district court noted that Inlet's expert and Childress Duffy's expert disagreed on whether certain evidence was required for the elevator damage claim to get to a jury, but thought that this disagreement "made it apparent that 'reasonable doubt may be entertained by well-reasoned lawyers,'" and as such, the area of law was unsettled. And because the doctrine of judgmental immunity applied—due to Childress Duffy's exercise of reasonable judgment—as a matter of law, Childress Duffy had not breached any duty it owed to Inlet.

## II

In a diversity case like this one, we are required to apply the law as declared by the Florida Supreme Court. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1177 (11th Cir. 2013). Absent authority from the Florida Supreme Court, we look to Florida's intermediate appellate courts to determine issues of state law as

we believe the Florida Supreme Court would. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).

Exercising *de novo* review, *see Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014), we affirm the grant of summary judgment in favor of Childress Duffy. We agree with the district court that judgmental immunity applies to the firm's performance in this case, though for somewhat different reasons.

### A

Inlet first argues broadly that judgmental immunity applies only when an attorney makes a decision on a "fairly debatable point of law" or an "unsettled area of law." According to Inlet, the doctrine does not apply to an attorney's tactical or strategic decision, even if that decision is made in good faith. We disagree, and begin our discussion by summarizing the Florida Supreme Court's 1998 decision in *Crosby*, which cemented the judgmental immunity doctrine in Florida.

*Crosby* explained that in Florida an "attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill, and dispatch." *Crosby*, 705 So. 2d at 1358. "This does not mean, however, that an attorney acts as an insurer of the outcome of a case." *Id.* The Florida Supreme Court therefore explained that "[g]ood faith tactical decisions *or* decisions made on a fairly debatable point of law are generally not

actionable under the rule of judgmental immunity." *Id.* (emphasis added). To see what that statement means in context, we look to the facts in *Crosby*.

Samuel Crosby represented Patricia Jones, who was injured in a car crash, in her suit against the other driver and the driver's employer. *Id.* at 1357. Ms. Jones settled with the driver's insurer, and based on Mr. Crosby's advice, she released the driver in a document expressly providing that she was not releasing the driver's employer. She then moved to dismiss with prejudice her claims against the driver. *Id.* At the time, in Florida the law was unclear as to whether dismissing a case with prejudice against the tortfeasor eviscerated a claim against the principal of the tortfeasor. *Id.* The trial court entered summary judgment in favor of the employer, finding that Ms. Jones' dismissal with prejudice with respect to the driver constituted an adverse adjudication on the merits and barred further action against the employer. *Id.* Ms. Jones then sued Mr. Crosby for legal malpractice. *Id.*

The trial court granted summary judgment in favor of Mr. Crosby, citing Florida's judgmental immunity doctrine. *Id.* The Second District reversed, stating that because the relevant state law was unclear at the time Mr. Crosby represented Ms. Jones, it was up to a jury to determine whether Mr. Crosby had exercised reasonable judgment in advising Ms. Jones to dismiss the suit against the driver. *Id.* The Florida Supreme Court reversed the Second District, and ruled that the trial court had properly granted summary judgment because judgmental immunity

insulated Mr. Crosby from liability. *Id.* at 1359. Providing judgmental immunity for an attorney's exercise of judgment in an unsettled area of law, *Crosby* explained, "is premised on the understanding that an attorney, who acts in good faith and makes a diligent inquiry into an area of law, should not be held liable for providing advice or taking action in an unsettled area of law." *Id.* at 1358.

Judgmental immunity, according to *Crosby*, generally applies to "[g]ood faith tactical decisions *or* decisions made on a fairly debatable point of law." *Id.* (emphasis added).    But *Crosby* only involved a decision made on a fairly debatable point of law, and the Florida Supreme Court has not addressed judgmental immunity in the 17 years since it decided *Crosby*. Neither have we. *See Littell v. Law Firm of Trinkle, Moody, Swanson, Byrd & Colton et al.*, 345 F. App'x 415, 421 (11th Cir. 2009) (not reaching applicability of doctrine due to affirmance on other grounds).

Inlet argues that, because *Crosby* only involved a decision on a fairly debatable point of law, the language in the opinion referring to good faith tactical decisions constitutes dicta. Inlet asserts that judgmental immunity applies only to "judgments made based on unsettled law" after diligent inquiry—i.e., judgments concerning the interpretation of the law—and does not and should not extend to an attorney's tactical decisions, even if made in good faith. *See* Brief for Appellant at 30-38.

12

Inlet's argument is not completely without merit; indeed, as Inlet notes, some of Florida's intermediate appellate courts (as well as some federal district courts) have suggested or stated that *Crosby* does not extend to good faith tactical decisions. *See, e.g., Sauer v. Flanagan & Maniotis, P.A.*, 748 So. 2d 1079, 1081-82 (Fla. 4th DCA 2000) (declining to apply judgmental immunity to a law firm's "judgment call" and advice regarding a settlement offer because it could "discern no basis for concluding that an attorney is insulated from liability for failing to exercise ordinary skill and care in resolving settlement issues"); *FDB II Assocs., LP v. Moore & Van Allen, PLLC*, No. 13-81152-Civ, 2014 WL 6682624, *4 (S.D. Fla. Nov. 25, 2014) ("Following *Crosby*, Florida appellate courts have consistently limited application of the [judgmental immunity] rule to cases involving professional judgment on fairly debatable or unsettled points of law, and have specifically rejected the suggestion that the doctrine more broadly applies to insulate any good faith exercise of professional judgment.").

But Inlet is not entirely right either. Consistent with the language of *Crosby*, several of Florida's intermediate appellate courts have held or stated that judgmental immunity also applies to an attorney's good faith tactical decisions. *See, e.g., Hanson v. Fowler, White, Burnett, P.A.*, 117 So. 3d 1127, 1133 (Fla. 3d DCA 2012) ("This doctrine applies in instances where the attorney makes '[g]ood faith tactical decisions or decisions made on a fairly debatable point of law.'");

13

*Natural Answers, Inc. v. Carlton Fields, P.A.*, 20 So. 3d 884, 888 (Fla. 3d DCA 2009) ("Moreover, the doctrine of judgmental immunity prevents lawsuits based on an attorney's good faith tactical decisions."); *Air Turbine Tech., Inc. v. Quarles & Brady, LLC*, No. 4D14-110, 2015 WL 3480236, *6 (Fla. 4th DCA June 3, 2015) ("Good faith tactical decisions are generally not actionable under the rule of judgmental immunity.") (internal quotations and citations omitted); *Proto v. Graham*, 788 So. 2d 393, 395 (Fla. 5th DCA 2001) ("Good faith tactical decisions are not actionable in Florida.").

In *Natural Answers*, a corporation which lost a breach of contract/promissory estoppel federal lawsuit related to a corporate investment sued its attorneys, alleging in part that they had "committed litigation malpractice by not adequately defending [the corporation] against [the other party's] motion for summary judgment in the federal litigation." 20 So. 3d at 887. The trial court granted summary judgment in favor of the attorneys, finding that their conduct did not proximately cause the corporation's loss. *Id.* The Third District agreed with the trial court on the proximate cause issue, but added an alternative ground for affirming: "Moreover, the doctrine of judgmental immunity prevents lawsuits based on an attorney's good faith tactical decisions." *Id.* at 888.[2]

---

[2] Inlet asserts that the only holding in *Natural Answers* concerned the absence of proximate cause, and that any discussion of judgmental immunity was dicta. *See* Brief for Appellant at 35 & n.9. Under Florida law, however, alternative holdings constitute binding

14

Where Florida's intermediate appellate courts are divided as to how to apply a principle of law, "we look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court." *Bravo v. United States*, 532 F.3d 1154, 1164 (11th Cir. 2008) (citing *Farmer v. Travelers Indem. Co.*, 539 F.2d 562, 563 (5th Cir. 1976), and *Peoples Bank of Polk Cnty. v. Roberts*, 779 F.2d 1544, 1546 (11th Cir. 1986)). This case was filed in the Miami Division of the Southern District of Florida; had it been filed in state court in Miami, the Third District would have had jurisdiction over any appeal. As a result, we are guided by the Third District's decision in *Natural Answers.* And because *Natural Answers* expressly applied judgmental immunity to an attorney's good faith tactical decision, we reject Inlet's argument that the doctrine is limited to judgments on an unsettled area of law or a fairly debatable point of law after diligent inquiry.

We recognize Inlet's concern that, if judgmental immunity is broadly and indiscriminately applied to all good faith tactical decisions, a number of malpractice actions against Florida attorneys might be curtailed or eliminated. *See* Brief for Appellant at 37, 39. *See also* Dan B. Bobbs et al., *The Law of Torts* § 721 (2d ed. 2014) ("[C]ourts often say that lawyers are not liable for good-faith errors

---

precedent. *See Parsons v. Fed. Realty Corp.*, 143 So. 912, 920 (Fla. 1932) (on rehearing); *Paterson v. Brafman*, 530 So. 2d 499, 501 n.4 (Fla. 3d DCA 1988). So the Third District's ruling on judgmental immunity, though very brief, is a holding.

in judgment, but taken literally this would virtually eliminate all lawyer liability."). But the Florida Supreme Court's description of judgmental immunity includes "good faith tactical decisions," *Crosby*, 705 So. 2d at 1358, and *Natural Answers* has applied the doctrine to tactical decisions by attorneys. It is not for us to rule otherwise.

## B

Inlet also makes a number of other arguments challenging the district court's application of Florida's judgmental immunity doctrine. Inlet first contends that the lack of an established method to try a first-party hurricane case does not constitute an unsettled area of law. Inlet then asserts that judgmental immunity does not apply where there is evidence, if believed, that the attorneys' conduct fell below the reasonable standard of care. Finally, Inlet argues that the district court erred in concluding that it had failed to allege or present sufficient evidence that Childress Duffy had not acted in good faith. We are not persuaded that the district court committed reversible error.

## 1

Even if we agreed with Inlet that the lack of an established method to try a first-party hurricane case does not constitute an unsettled area of law, this would not aid Inlet. *Crosby* states that there is judgmental immunity for decisions made by attorneys on a fairly debatable point of law *or* attorneys' good faith tactical

decisions, and *Natural Answers* applies the doctrine to attorneys' good faith tactical decisions. Furthermore, the most recent intermediate appellate court decision in Florida to address judgmental immunity applied the doctrine to shield from malpractice liability an attorney's good faith tactical decision to not call an expert witness to testify at a fee hearing. *See Air Turbine Tech.*, No. 4D14-110, 2015 WL 3480236 at \*7. As we conclude that Childress Duffy's decisions on how to prosecute Inlet's elevator damage claim constituted good faith tactical choices, we need not address whether the lack of an established method to try a particular type of case would be considered an unsettled area of law.

**2**

We next turn to Inlet's contention that judgmental immunity does not apply where there is evidence, if believed, that the attorneys' conduct fell below the standard of reasonable care. In support of this contention, Inlet cites and relies primarily on the Fourth District's decision in *Sauer*, 748 So. 2d at 1081-82 (refusing to extend *Crosby* to malpractice claim based on attorneys' recommendation that client reject settlement offer because attorneys' "judgment call . . . fell below the standard of reasonable care"). Although *Sauer* provides support for Inlet's contention, its holding and language run counter to the Fourth District's subsequent decision in *Air Turbine Tech.*, No. 4D14-110, 2015 WL

17

3480236 at *6-7, and the Third District's decision in *Natural Answers*, 20 So. 3d at 888, which we are required to follow under *Bravo*, 532 F.3d at 1164.

In addition, *Sauer* must also be read in light of its facts. In *Sauer*, the Fourth District reversed the trial court's grant of summary judgment in favor of the law firm under the judgmental immunity doctrine. Because there were "substantial fact issues to be resolved by trial" as to whether the attorneys had acted in good faith, and ergo, failed to meet the reasonable standard of care, the court held that judgmental immunity did not apply. 748 So.2d at 1080. The facts of *Sauer*, as set out below, are relevant to the Fourth District's discussion of the doctrine and ultimate refusal to apply it to the law firm.

Ms. Sauer hired Flanagan and Maniotis, P.A. ("F&M") to represent her in a negligence claim against her employer, after having fallen at work and developing reflex sympathetic dystrophy. *Id.* Before trial, her employer offered her $ 1 million to settle the case. *Id.* According to Ms. Sauer, F&M dissuaded her from taking the settlement offer and told her "there was no potential downside in rejecting the offer" because "there was no way they were going to lose at trial" and that she would be "crazy" to take the offer. *Id.* Ms. Sauer proceeded to trial and lost. After the trial, Ms. Sauer filed suit against F&M for legal malpractice and retained a legal expert who opined that F&M did not properly prepare for Ms. Sauer's case by failing to have an expert testify as to the standard of care or examine Ms.

Sauer's shoe. The legal expert also opined that if F&M had advised Ms. Sauer that she had a 99% chance of winning the dispute at trial, such conduct breached its duty of care.

F&M fervently disputed Ms. Sauer's account of events. According to F&M, the firm informed Ms. Sauer of the risks of going to trial. *Id.* at 1080-81. F&M argued it should be insulated from liability under the judgmental immunity doctrine because it was "making a 'judgment call' in advising that the client reject a settlement offer." *Id.* at 1081. The Fourth District concluded, however, that, because there were material issues of fact as to whether the firm's conduct fell below the reasonable standard of care, summary judgment was improper. *Id.* at 1082.

F&M sought immunity, the Fourth District explained, "notwithstanding any validity to the claim that [it] breached a duty of reasonable care to [its] client in misleading her and failing to properly advise and furnish her with the information necessary for her to make an informed decision." *Id.* at 1081. The Fourth District ultimately denied summary judgment, without citing to the legal expert's affidavit, because "there [was] evidence, if believed, that the attorneys['] [conduct] fell below the standard of reasonable care." *Id.* at 1082.

The Fourth District's decision in *Sauer* is not as broad as Inlet suggests. It should not be read as blankly rejecting judgmental immunity as a matter of law for

good faith tactical decisions or as holding that judgmental immunity applies only when an attorney makes a diligent inquiry into an unsettled area of law.

First, a recent decision by the Fourth District, dealing with whether an attorney's decision not to call an expert witness to testify as to legal fees in federal district court constituted legal malpractice, applied Florida's judgmental immunity doctrine to what it deemed was the attorney's good faith tactical decision to not have an expert testify.[3] *See Air Turbine Tech.*, No. 4D14-110, 2015 WL 3480236, at *6-7. In *Air Turbine*, the Fourth District noted that in federal court an expert was not required to testify to legal fees and specifically held that "[t]he decision to not call a fee expert in federal court was the essence of a good faith tactical decision that is protected under the judgmental immunity." *Id.* at *7.  The Fourth District, moreover, recognized that the judgmental immunity doctrine, as articulated by the Florida Supreme Court, in *Crosby*, applied to good faith tactical decisions. *Id.* at *6. After concluding, that the attorney in the case "made the tactical decision not to hire an expert witness on the issue of reasonableness of attorney's fees," the Fourth District applied judgmental immunity to insulate the attorney from the malpractice claim.

Second, it appears to us that in *Sauer* there was a dispute of material fact as to whether F&M had acted in good faith, a precondition of judgmental immunity.

_____

[3] We have considered Inlet's interpretation of *Air Turbine*, as set forth in Inlet's Rule 28(j) letter dated June 15, 2015.

20

If the facts were as Ms. Sauer alleged, F&M could not have acted in good faith. Viewing the evidence in the light most favorable to Ms. Sauer, the Fourth District did not believe F&M had acted "in the honest belief that [its] advice [was] well-founded and in the best interest of [its] client." *Id.* at 1082. And because F&M sought immunity "notwithstanding any validity to the claim . . . [that it] misle[d] [Ms. Sauer] and fail[ed] to properly advise" her, the Fourth District was unwilling to grant summary judgment. *Id.* at 1081-82. Our reading of *Sauer*, therefore, does not support Inlet's contention that summary judgment was improper because there is a material dispute as to whether Childress Duffy's prosecution of the elevator damage claim fell below the reasonable standard of care.[4]

**3**

According to Inlet, its malpractice claim should be resolved by a jury because the parties' legal experts disagreed about the propriety of Childress Duffy's conduct; Inlet's legal expert opined that Childress Duffy's representation of its elevator damage claim fell below the standard of care, while the firm's legal expert opined that Childress Duffy exercised proper professional judgment in making a "wise tactical decision." We are not persuaded by Inlet's argument.

---

[4] It is perhaps also worth noting that if Ms. Sauer's version of events were true, F&M's conduct could have potentially violated Florida's Rules of Professional Conduct. *See* Fla. R. Prof. Conduct R. 4-1.4(b) (requiring attorneys to "explain a matter to the extent reasonably necessary to permit the client to make [an] informed decision regarding the representation").

21

The parties in *Natural Answers* also disputed whether the attorneys had breached the reasonable standard of care. *See* 20 So. 3d at 888-89. The plaintiff in *Natural Answers*, much like Inlet, "offered an 'expert' affidavit of [an] attorney," who "speculated that in his opinion, had the law firms conducted the litigation differently, the outcome of the case would have favored [the plaintiff claiming malpractice]." *Id.* at 888.  The Third District concluded, however, that this expert affidavit did not create a genuine issue of material fact because it simply opined without factual support that the attorneys' conduct fell below the reasonable standard of care and granted summary judgment in favor of the attorneys. *Id.* at 888-89.  We see no reason why the same rationale does not apply here.

We also disagree with Inlet's suggestion that a dispute concerning whether an attorney's performance met the standard of care necessarily precludes judgmental immunity. To establish a claim for legal malpractice, a "plaintiff must plead and prove . . . : (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of the client's loss." *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999). An attorney breaches his duty to his client when the attorney's performance falls below the reasonable standard of care. *See Crosby*, 705 So. 2d at 1358.  The issue of breach is ordinarily one for a jury, *see Keramati v. Schackow*, 553 So. 2d 741, 746 (Fla. 5th DCA 1989), and we can assume here (without deciding) that the opinion of

22

Inlet's legal expert would allow a jury to find a breach by Childress Duffy. But that does not help Inlet avoid judgmental immunity.

The general rule in Florida is that, "[c]onceptually, the question of the applicability of . . . immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989) (addressing governmental immunity) (citations and internal quotation marks omitted). *See also Breaux v. City of Miami Beach*, 899 So. 2d 1059, 1063 (Fla. 2005) ("In cases involving governmental tort liability, we generally determine whether the defendant owes a duty of care to the plaintiff before we address whether the governmental entity is immune from liability."); *Wallace v. Dean,* 3 So. 3d 1035, 1044 (Fla. 2009) (same). This indicates that the question of whether Childress Duffy's conduct fell below the reasonable standard of care (the breach question) is necessarily distinct from the question of whether judgmental immunity applies. We can assume, as Inlet asks us to do, that Childress Duffy breached its duty of care, and still conclude that the firm's conduct constituted a good faith tactical decision deserving of judgmental immunity.

**4**

Inlet's final argument is that the district court erred in ruling that there was no genuine issue of material fact as to whether Childress Duffy had acted in good

faith in its prosecution of Inlet's elevator damage claim. The district court concluded that Childress Duffy made a good faith tactical decision. Finding that Inlet had failed to allege or put on evidence that Childress Duffy did not act in good faith, the district court concluded that the firm's prosecution of Inlet's elevator damage claim was a composition of good faith tactical decisions. We agree.

We start out with the Florida Supreme Court's definition of good faith: "'Good faith is defined as 'an honest belief. . . . [h]onesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry. . . . [I]t describe[s] that state of mind denoting honesty of purpose . . . and, generally speaking, means being faithful to one's duty or obligation.'" *Florida Bar v. Jackson*, 494 So. 2d 206, 209 (Fla. 1986) (quoting *Black's Law Dictionary* 623-24 (5th ed. 1979)).

On appeal, Inlet argues that it did not concede that Childress Duffy had acted in good faith and that an allegation of bad faith should be inferred from the general allegations in its complaint and its response to Childress Duffy's motion for summary judgment. But Inlet's complaint never mentions whether the firm acted in good faith, and Inlet's opposition to the summary judgment motion merely lists good faith as a prerequisite to obtain judgmental immunity; it does not discuss whether Childress Duffy's decisions in presenting Inlet's elevator damage claim

24

constituted or demonstrated a lack of good faith. In fact, Inlet argued that judgmental immunity did not apply because firm's decisions were not decisions made on a fairly debatable point of law or in an unsettled area of law. In sum, Inlet did not sufficiently argue or raise the issue of good faith in the district court.

Inlet nevertheless claims that several of its allegations, taken together, constitute a claim of bad faith: Childress Duffy's failure to contact Otis to ascertain what testimony it could provide; Childress Duffy's failure to retain an independent elevator expert; and Childress Duffy's failure to explain why it would have submitted to the jury a claim it later described as "overreaching." Even if Inlet is correct about the collective meaning of these allegations, at summary judgment a plaintiff cannot rely on its allegations; it must provide evidence to support those allegations. *See Doe v. Drummond Co.*, 782 F.3d 576, 604 (11th Cir. 2015) ("Plaintiffs could not rely upon mere allegations to survive summary judgment, but were required to either point out evidence in the record or provide additional evidence in support of their claims sufficient to withstand a directed verdict motion."). And this Inlet failed to do.

Inlet's legal expert, Theodore Corless, failed to offer any opinion with respect to whether Childress Duffy acted in good faith. Consistent with Inlet's broad view that judgmental immunity only applies where there are unsettled questions of law, Mr. Corless opined only that Childress Duffy's "failure to offer

25

some form of real evidence" and engage proper experts to testify to the elevator damage fell below the reasonable standard of care.

Even a liberal reading of the complaint, Inlet's response to the summary judgment motion, and the report of Inlet's expert do not amount to an allegation of bad faith, but rather a claim that the firm breached its duty of care. And Inlet cannot now argue for the first time on appeal that Duffy did not act in good faith. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has 'repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt.'") (internal quotations and citations omitted).

## III

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of Childress Duffy.[5]

**AFFIRMED.**

---

[5] Inlet also appealed the district court's striking of its claim for punitive damages. Because we affirm the district court's grant of summary judgment on the legal malpractice claim, Inlet's claim for punitive damages is moot. *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1262-63 (Fla. 2006) ("A finding of liability necessarily precedes a determination of [punitive] damages . . . ."). *See also Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1562 (11th Cir. 1986) ("Our decision upholding summary judgment [in favor of the appellee] moots any claim to punitive damages.").